[Civ. No. 1484.   Third Appellate District.—September 13, 1916.]

RICHMOND DREDGING COMPANY (a Corporation), Respondent, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

CONTRACT FOR FILLING IN LAND—RECOVERY OF BALANCE DUE—PLEADING—UNWARRANTED VERDICT.—In an action by a dredging company to recover the balance due for material furnished and work performed under a contract for the filling in of a tract of land owned by a railroad company, the jury is not warranted in allowing the plaintiff in addition to the number of cubic yards found to have been deposited multiplied by the contract price per cubic yard, an amount based upon evidence that the hardest part of the work had been done when the plaintiff discontinued the work, in the absence of any averment in the complaint authorizing such additional allowance.

Id.—Nature of Work—Mechanics' Lien Law Inapplicable.—The filling in of a part of a tract of land of fifty or more acres belonging to a railroad company, having for its principal object the location and opening of an avenue across the land and to provide a roadbed to which the line of another railway company might sometime be removed from its present location between the company's tracks and the proposed avenue, is not within the provisions of section 1183 of the Code of Civil Procedure which gives a lien to "all persons . . . performing labor upon, or furnishing materials to be used in the construction, alteration, addition to, or repair, either in whole or in part, of any building . . . , railroad, wagon-road or other structure," etc.

Id.—Number of Cubic Yards Deposited—Acceptance of Monthly Vouchers.—Monthly vouchers made out by the defendant showing the estimated amount due for work done during the previous month and, as provided by the contract, the installment of seventy-five per cent due and twenty-five per cent retained, are not to be regarded as accounts stated, as to the number of cubic yards actually deposited, in the absence of any evidence other than a receipt signed by the plaintiff at the bottom of each voucher for the amount thereof.

Id.—Delay in Payment—Acceptance of Money on Overdue Vouchers — Lack of Estoppel.— The acceptance of money on such vouchers at dates later than provided in the contract, without protest, does not estop the plaintiff from denying that payment for a subsequent month was not tendered in time, where the defendant was notified that prompt payment must be made in the future.

Id.—Pleading—Damages—Failure to Maintain Levees—Failure to Construct in Time—Separate Counts—Lack of Prejudice.—In such an action the setting up as separate causes of action alleged damages for failure to maintain the levees necessary to impound the material deposited, and for the failure to have the levees in readiness at the time promised, is not prejudicial, where there was evidence sufficient to support the verdict on both counts.

Id.—Evidence—Letters—Lack of Preliminary Proof of Authenticity—Insufficient Ground of Reversal.—In such action, the admission in evidence of certain letters purporting to have been written by defendant's engineer in charge of the work, which to some extent conceded the defendant's default in failing to construct the levees to impound the material, and which were received by the president of the plaintiff company through the mail, without preliminary proof of their authenticity, is error, but not so prejudicial as to justify a reversal, where the genuineness of the letters was not challenged, and the writer and the recipient were both present in court, and the latter testified that he received the letters from the former through the mail.

APPEAL from a judgment of the Superior Court of Contra Costa County, and from an order denying a new trial. R. H. Latimer, Judge.

The facts are stated in the opinion of the court.

E. W. Camp, H. D. Pillsbury, Platt Kent, and C. E. McLaughlin, for Appellant.

Wm. H. H. Hart, and Frank W. Hooper, for Respondent.

CHIPMAN, P. J.—The action is for damages arising out of a written contract of date January 31, 1910, between defendant as first party, plaintiff as second party, and East Shore & Suburban Railway Company, third party. This latter company is not made a party to the action.

Defendant is the owner of a tract of land situated in the city of Richmond, Contra Costa County, and was desirous of having "said land filled in as herein (by the contract) provided." The area to be filled is particularly described in the contract; the cubic measurement of said area as stated in the contract was "estimated at approximately two hundred and twenty thousand yards," and "the second party agrees to fill, at the rate of fifteen cents per cubic yard, within the area described." A map was attached to the contract as part thereof showing the area to be filled and other facts.

Defendant was to pay plaintiff on "the 15th day of each month, for the work done during the preceding month, seventy-five per cent of the amount estimated by the engineer of the first party to have been earned by the second party during such preceding month and the first party will retain the remaining twenty-five per cent of all monthly estimates of work done until thirty-five days after the completion and acceptance by the first party, of the work herein agreed to be performed. . . . The first party is to construct and maintain any and all levees north of Ohio street necessary or proper to impound the material deposited on the area hereinabove described as lying north of said Ohio street; also such levees as may be necessary to protect its main line between Ohio street and Richmond avenue."

Plaintiff's claim is presented in four causes of action. By the first cause of action it is alleged that plaintiff entered

31 Cal. App.—26

upon the work pursuant to the contract and gave the bond specified therein and continued the work "up to on or about the 17th day of August, 1910"; that the work performed and material furnished "was accepted by the defendant as having been done and supplied in a workmanlike manner and in accordance with the terms of said contract"; that defendant refused to pay plaintiff for its said services and material furnished by plaintiff "during the month of July, 1910, or any part of said money, and in accordance with the terms of said contract, and by so refusing and neglecting to pay such money, defendant rendered, caused, and made it impossible for the plaintiff to further continue performance under the contract; and on or about the 17th day of August, 1910, the plaintiff without fault on its part, did discontinue and suspend work under said contract, although plaintiff was fully equipped and prepared to continue such work and had expended a large amount of money for materials and supplies necessary to complete the same"; whereupon on said last-mentioned day, "plaintiff notified the defendant that plaintiff would perform no further work under said contract because of defendant's neglect and refusal to pay to the plaintiff in accordance with the terms of said contract the amount due, owing and coming to the plaintiff from the defendant for the work and services theretofore performed and labor and material theretofore supplied under said contract"; that plaintiff furnished material and performed work under said contract and in accordance with its terms of the value of $46,575, no part of which has been paid to plaintiff except the sum of $10,575, and there is now due and owing plaintiff from defendant the sum of thirty-six thousand dollars.

The second cause of action is for "work and labor and services heretofore performed and material furnished and supplied by plaintiff for the defendant at the special instance and request of defendant."

In the third cause of action the making of the contract is alleged; furthermore, that the defendant undertook to build the levees called for in said contract, but that it constructed said levees in such a negligent and imperfect manner as that they failed to hold or impound the material deposited on the said area by plaintiff to the great damage of plaintiff; that by reason thereof the defendant so delayed and embarrassed plaintiff as to cause plaintiff to suspend the entire work un-

der said contract, and large amounts of material deposited on said area by plaintiff were not held or impounded thereon; that by reason of defendant's said default, plaintiff was compelled to keep its working forces idle for long periods of time and to pay wages to its employees and rent for a dredger used by plaintiff, all to the loss and damage of said plaintiff in the sum of $6,818.81.

As a fourth cause of action the contract is pleaded and it is alleged that plaintiff on February 12, 1910, notified defendant that plaintiff would be ready to commence operation under said contract as soon as the necessary levees were constructed to impound the material to be dredged and defendant, on or about February 15, 1910, notified plaintiff that proper levees would be constructed on or before February 20, 1910; that on said last-named date plaintiff hired a dredger at large expense and placed it in position to enter upon said work together with a full crew of men to operate the same and was in readiness to commence work on February 25th; that defendant failed and neglected to construct the levees necessary to impound the material to be deposited until March 10, 1910, and thus prevented plaintiff from commencing operations under said contract until March 10, 1910, to its damage in the sum of three thousand dollars.

In the prayer plaintiff asks judgment for thirty-six thousand dollars, the amount claimed in the first and second causes of action, and interest from August 15, 1910; for the further sum of $16,818, the amount claimed in the third cause of action; and for the further sum of three thousand dollars, the amount claimed in the fourth cause of action.

In its answer to the first cause of action defendant denies most of its averments; alleges that it mailed at Los Angeles vouchers for work done by plaintiff, to wit, for March, on April 21, 1910; for April, on May 21; for May, on June 21, and for June on July 20, 1910, amounting in all to $10,596.53, and that plaintiff accepted the said payments and that on or about August 17, 1910, defendant offered to pay plaintiff the amount found to be due for work performed and materials furnished for the month of July, but plaintiff refused and still refuses to accept the same; alleges that at the time of the abandonment of said contract by plaintiff the value of the work done and materials furnished by it was the sum of $21,978.80 and not the sum of $46,575 as set forth in the com-

plaint; denies that there is any sum due and owing plaintiff save and except the sum of $3,387.57; that there was due plaintiff for July the sum of $4,080, which sum defendant tendered plaintiff and was refused, and that there is due plaintiff for work done and materials furnished from August 1 to August 17, 1910, the sum of $1,837.57; that said contract was signed, and delivered on March 3, 1910, and not on January 31, 1910, as alleged in the complaint.

Answering the second cause of action, defendant alleges that there is due plaintiff from defendant the sum of $3,387.57 and no more.

Answering the third cause of action defendant denies that it has failed to perform the contract and alleges failure of plaintiff to evenly distribute the material dredged, and that plaintiff so negligently filled said area that the embankments constructed by defendant were thereby caused to break and give way and the progress of the work was thereby delayed.

For answer to the fourth cause of action, denies the averments of the complaint and avers that by the terms of the contract it was agreed that plaintiff should begin work thereunder not later than April 1, 1910, and alleges the construction of the levees by defendant as called for in the contract.

By way of counterclaim alleges that plaintiff and defendant entered into a written contract on or about March 3, 1910, which provided that the work should be done and completed on or before October 1, 1910; that plaintiff failed to complete said work and it still remains uncompleted to defendant's damage in the sum of thirty thousand dollars.

For further and distinct defense alleges the contract attached to plaintiff's complaint; that defendant made payments monthly as therein provided for and plaintiff received the same except the voucher for the month of July, 1910, which plaintiff "returned without cashing the same"; that by accepting said vouchers and payments for the months of March, April, May, and June, for said work plaintiff "is estopped from denying that said work was done and performed in accordance with said contract or from denying that said contract was at all said times and now is in full force and effect."

For a further defense alleges that "the estimate of the engineer was a condition precedent to the making of such payment," and defendant was unable to obtain the estimates in

time to furnish its voucher "until after the 15th day of the month upon which the payment was to have been made," and that defendant was not in default in respect of March payment; that on September 1, 1910, and before payments could be made under said contract, defendant was served with an attachment in an action wherein plaintiff was defendant and by reason thereof defendant has been prevented from making any further payments.

For further defense alleges that under the terms of said contract the payment to be made thereunder is largely in excess of one thousand dollars and said contract has never been recorded in the office of the county recorder of Contra Costa County, and by reason thereof is wholly void.

The cause was tried with the assistance of a jury and defendant submitted certain interrogatories which, with their answers, follow:

"1. How much do you find from the evidence the defendant has paid to the plaintiff for work done under the contract described in plaintiff's complaint?   Answer: $10,575.

"2. How many cubic yards of earth do you find from the evidence was deposited upon the entire area described in the contract that remained there?   Answer: 181,500 cu. yards.

"3. How many cubic yards of earth do you find from the evidence was deposited by the plaintiff outside the area described in the contract resulting from overflow through breaks in the levees?   Answer: 1,000 cu. yards.

"4. When was the contract described in plaintiff's complaint signed and delivered by the East Shore & Suburban Railway Company?   Answer: On or about the 3d of March, 1910.

"6. If you find for the plaintiff, how much do you allow upon the first cause of action, described in plaintiff's complaint?   Answer: $19,773.

"7. If you find for the plaintiff, how much do you allow upon the second cause of action in plaintiff's complaint?   Answer: Nothing.

"8. If you find for the plaintiff, how much do you allow upon the third cause of action in plaintiff's complaint?   Answer: $5,476.50.

"9. If you find for the plaintiff, how much do you allow upon the fourth cause of action in plaintiff's complaint?   Answer: $675.

"10. Do you allow the defendant any sum for damages, as set forth in the answer, and counter-claim, and if so, how much? Answer: Nothing."

Judgment was accordingly entered in favor of plaintiff for the sum of $25,925, from which and from the order denying its motion for a new trial, defendant appeals.

1. Appellant contends, first, that the amount found by the special verdict under the first cause of action, to wit, $19,773 (interrogatory 6), was excessive to the extent of $3,123. That conclusion is thus reached:

181,500 cu. yards found by the jury to have been
     deposited on the ground (interrogatory 2) at
     the contract price of 15c per cu. yard, equals..$27,225.00
Amount paid plaintiff as found by the jury.... 10,575.00

                       Bal. due .....................$16,650.00

Respondent replies that the interrogatory called for the cubic yards "deposited upon the entire area described in the contract *that remained there,*" and that appellant has overlooked the latter part of the interrogatory; that the jury in reply to it had the right to take into consideration all the materials deposited upon the described area, including that which escaped because of insufficient levees. To meet this reply appellant calls attention to interrogatory 3 which was the finding of the jury that the quantity of earth deposited outside of the area "resulting from overflow through breaks in the levees," was one thousand cubic yards. If this can be held to be the amount of earth which escaped from the designated area and should be considered as earth that did not "remain there," it would add but $150 and the excess would still be $2,973. It is not claimed by plaintiff that it deposited, or had the right to deposit, earth outside the area. Its claim is that where earth deposited in the described area escaped for lack of sufficient levees, it should be compensated therefor. Appellant's answer is that the jury having found the extent of this overflow, the damages are measured by the contract price of fifteen cents per cubic yard.

Respondent, however, makes the further contention as borne out by the evidence, that the work done previous to its suspension, was the hardest and most expensive part of the dredging work, and "the jury had a right to take this fact into consideration in arriving at the amount which respond-

ent had earned under the contract mentioned in the first cause of action.''

No special damages are alleged in the first cause of action. The averments are that plaintiff entered upon the work ''pursuant to the terms of said contract and continued on the work provided for in and by said contract up to on or about the 17th day of August, 1910.'' It is further alleged ''that all the said work and labor and service done and performed and all material supplied by said plaintiff was done and performed and supplied strictly in accordance with the terms of said contract and was accepted by the defendant as having been done in a workmanlike manner and in accordance with the terms of said contract.'' The second count was on *quantum meruit* but the jury found that there was nothing due on the second cause of action. (Interrogatory 7.)

Special damages were alleged in the third count for defendant's failure to construct necessary levees and the consequent damages for which the jury allowed $5,476.50, and in the fourth count special damages were alleged for defendant's neglect in not having levees constructed at the time promised, and hence the additional cost to plaintiff by reason of expenses incurred while thus delayed in the work. For this the jury allowed plaintiff $675.50. These three items make up the exact sum found by the general verdict.

It seems to us that there is no allegation in the first cause of action which can be made the basis for damages other than as provided for by the contract, and the agreement there is to pay fifteen cents per cubic yard for earth deposited under the contract. The number of cubic yards was found by the jury and the contract fixed the price to be paid. We can discover no averment in the first cause of action which would authorize the jury to add as further damages an amount based upon evidence ''that the hardest part of the work had been done'' when plaintiff quit the job. It was expressly alleged that the work was done ''strictly in accordance with the terms of said contract,'' and was ''accepted by the defendants as having been done in accordance with the terms of said contract.'' It was held in *California Wine Assn.* v. *Commercial Union Fire Ins. Co.*, 159 Cal. 49, 52, [112 Pac. 858], that ''the special verdicts absolutely control the general verdict''; *Napa Valley Packing Co.* v. *San Francisco Relief and Red Cross Funds*, 16 Cal. App. 461, [118 Pac. 469]. It seems to us

quite clear that the special verdicts were addressed directly to the issues in the case and responded specifically to each of the causes of action. These several answers to interrogatories or special verdicts constituted the basis of the general verdict, and if any one of these answers or special verdicts was unsupported by the evidence the general verdict cannot stand.

The special verdict upon the first cause of action is not supported by the evidence. The contract provided that plaintiff was to be paid fifteen cents per cubic yard for earth deposited by it, and the jury found the number of cubic yards deposited both within and without the area. The exact damage, therefore, under the first cause of action, may be ascertained by a simple example in multiplication, and we see no reason why this may not be resorted to as showing the amount of plaintiff's damage under the first cause of action. The contract price for depositing 181,500+1,000 cubic yards of earth at fifteen cents per cubic yard will give the amount of plaintiff's damages—$27,375. Deducting payments made of $10,575 leaves $16,800, the amount due upon the first cause of action. This amount added to the findings under the third and fourth causes of action, to wit, $5,476.50 and $675.50 makes in all the sum of $22,952, instead of $25,925.

2. Appellant claims that the work was of such character as to bring the contract within the provisions of section 1183 of the mechanics' lien law, and as the contract was not recorded it was void, and plaintiff's only remedy was in an action on *quantum meruit* for the value of the labor and material furnished, and the contract price will be taken as the basis for recovering damages which brings the same result as above shown. (*Laidlaw* v. *Marye,* 133 Cal. 170, [65 Pac. 391] ; *Condon* v. *Donohue,* 160 Cal. 749, [118 Pac. 113].)

It is claimed further, however, that plaintiff's recovery being limited to the contract price as above claimed, the verdict was against law because the jury awarded recovery on counts under which plaintiff was entitled to nothing (counts 3 and 4), and was denied recovery on count 2, the only one under which plaintiff had any legal ground for a verdict in its favor.

We cannot accept appellant's claim that the mechanics' lien law is applicable. The area to be filled was part of a tract of fifty or more acres, the property of defendant. As near as we can determine from the provisions of the contract

and from the map made part thereof, defendant's principal
object was to locate and open an avenue, called Ashland Ave-
nue, across defendant's land, and provide a roadbed to which
the line of the East Shore & Suburban Railroad Company
might sometime be removed from its present location between
the defendant's track and the proposed Ashland Avenue.
Just why this was deemed necessary or advisable does not
appear. The contract reads: "The third party (Suburban
Railway) agrees that upon the filling in of said Ashland Ave-
nue to grade, as hereinabove provided, the first party shall
have the right to remove the tracks of the third party now
situated in part on the area to be filled in under this contract
in the following manner: [describing the route or new loca-
tion of the suburban track]. . . . The cost of the removal
and the relocation of said line is to be borne wholly by first
party," etc. We do not think that this work can reasonably
be held to fall within the provisions of section 1183 of the
Code of Civil Procedure which gives a lien to "all persons
. . . performing labor upon or furnishing materials to be
used in the construction, alteration, addition to, or repair,
either in whole or in part, of any building . . . , railroad,
wagon-road or other structure," etc. There is no evidence
tending to show that defendant intended to make any present
use of this filled-in ground for the extension or relocation of
its tracks. The moving of the suburban railway company's
track to another location cannot be said to be the "con-
struction, alteration, addition to, or repair, . . . of" defend-
ant's railroad, or to be a "structure" connected with said rail-
road. It did not appear that the fill was necessary to the opera-
tion of defendant's road, or for stations, roundhouses, shops,
and the like which have been held to be included in the term
"railway."

3. We do not think that the monthly vouchers made out
by defendant showing the estimated amount due for work
done during the previous month, the installment of seventy-
five per cent due, and the twenty-five per cent retained as
provided in the contract, can be regarded as accounts stated.
Appellant claims that "the parties were bound thereby and
no recovery can be had except for the unpaid balance."
There were four of these for the months of March, April,
May, and June, respectively. The first one states the esti-
mated number of cubic "yards dredger filling," but the

others give only the estimated amount of money due, the result of former accounts being carried forward in successive accounts. At the bottom of each is a receipt signed by plaintiff for the amount of the voucher. Beyond this there is nothing to show that they were in effect new agreements or contained the elements constituting an account stated, or that they were intended as a settlement of the number of cubic yards actually deposited.

4. Nor do we think that because plaintiff received money on these vouchers at dates later than the 15th of each month without protest, it is estopped to deny that payment for July was not tendered in time. There might be force in this contention had plaintiff failed to notify defendant that prompt payment must be made in the future. On August 10, 1910, plaintiff wrote defendant as follows: "Because of the fact that our contract with you allows you to retain 25% of the money we have earned and because of the fact that your engineer persists in underestimating the amount of material delivered it is absolutely necessary that we should receive your check for the material delivered during the preceding month on the 15th as our contract specifies. Heretofore your check has arrived anywhere from the 23rd to the 30th of the month instead of on the 15th. Our contract with the power company compels us to pay for the current used on the 15th. Unless we pay our bill the current will be shut off and we will be caused both damage and delay therefore we must demand that we be paid as per contract on the 15th." Notwithstanding this demand, defendant did not offer to pay for the July work as demanded and on August 17, 1910, plaintiff notified defendant in writing that plaintiff considered itself released from "further performance under said agreement," and demanded payment for the work and services performed. The failure to make the payment demanded in compliance with the terms of the contract was a substantial breach thereof, and justified the plaintiff in not proceeding further. (*San Francisco Bridge Co.* v. *Dumbarton L. & I. Co.,* 119 Cal. 272, [51 Pac. 335] ; *Woodruff Co.* v. *Exchange Realty Co.,* 21 Cal. App. 607, [132 Pac. 598] ; *American-Hawaiian Eng. & Con. Co.* v. *Butler,* 165 Cal. 497, [Ann. Cas. 1916C, 44, 133 Pac. 280].)

5. It is urged that the third cause of action included every element of damage which could accrue from the breach of

the contract, and that the damages were duplicated by reason of damages also being awarded under the fourth cause of action; that a party cannot split up a single cause of action and maintain separate actions thereon; that damages arising from a single wrong, though at different times, make but one cause of action. (*Hall* v. *Susskind*, 109 Cal. 209, [41 Pac. 1012].)

This rule of pleading was not invoked by demurrer nor was it raised at the trial. Doubtless the facts constituting the damages could have been set up in a single count and probably should have been, but we cannot see that defendant suffered prejudice by plaintiff's failure to do so. The third cause of action was grounded on defendant's failure to maintain the levees necessary to impound the material deposited, thus causing suspension of work by plaintiff. The fourth cause of action was grounded on defendant's failure to have the levees in readiness at the time defendant promised. There was evidence sufficient to support the verdict on both of these counts.

6. The only remaining error assigned as prejudicial relates to the admission in evidence of certain letters purporting to have been written by Mr. Ball, defendant's engineer in charge of the work. The testimony was conflicting as to the failure of defendant to construct the levees to impound the material. There were two of these letters dated respectively May 2 (exhibit 4), and May 13, 1910 (exhibit 8), each purporting to be signed "R. B. Ball, Division Engineer." The letter of May 2d refers to a conversation previously had with plaintiff, and plaintiff answered this letter on May 3d (exhibit 5) ; the letter of May 13th (exhibit 8) refers to defendant's letter of May 12th, and all of them dealing with the matter of these levees, and defendant's letters to some extent conceding defendant's default. The letters were produced in court by witness Cutting, president of plaintiff company, who testified that he received these letters in due course through the United States mail. It appeared that on Saturday, Mr. Cutting had a conversation with Mr. Ball and that the letter of May 2d (exhibit 4) was in response to this conversation and to which plaintiff replied on May 3d. Defendant's letter of May 12th was answered by plaintiff by letter the next day. Witness Cutting did not testify to the handwriting of Mr. Ball nor that he knew his signature, nor

that he saw either of the Ball letters written, nor that he was a subscribing witness thereto. On these grounds defendant objected, and it is now urged that the letters were not properly identified. Appellant relies upon the rule as stated in *People* v. *Le Doux*, 155 Cal. 535, 550, [102 Pac. 517], "Where not acknowledged, a private writing must be proved in one of three ways: by anyone who saw the writing executed, or by evidence of the genuineness of the handwriting of the maker, or by a subscribing witness. (Code Civ. Proc., sec. 1940.) Such execution must be shown before it is entitled to admission. (*Sinclaire* v. *Wood*, 3 Cal. 98.)" Mr. Jones states the rule thus: "Before letters are received in evidence there must be, as in the case of other documents, some proof of their genuineness. This is not proved by the mere fact that the letter is received by mail, when the signature is not proved." (Jones on Evidence, 2d ed., sec. 583.)

The evidence shows that Mr. Ball and Mr. Cutting were in frequent, almost daily, communication in connection with the very matters the subject of the letters; sometimes their differences were made known in conversations and sometimes in letters. The evidence showed that the parties acted upon the suggestions in exchanged letters. The genuineness of Mr. Ball's letters was not challenged. He was a witness and in court and could have disclaimed writing them. Cutting no doubt was familiar with Ball's handwriting and his testimony: "That is a letter I received from Mr. Ball on Monday, the 2d day of May, 1910, through the mail" (referring to exhibit 4); again, "that is a letter received by me, received from Mr. Ball, Division Engineer, Santa Fe Railroad" (exhibit 8), we think, under the circumstances, was more than a mere conclusion of the witness. It was stated in *Verzan* v. *McGregor*, 23 Cal. 339, 343: "It is often the case that the main question in controversy is the execution and authenticity of the instrument. And the rule is, that if there be no evidence of authenticity, the instrument cannot be read to the jury; but if there be any fact or circumstances tending to prove the authenticity from which it might be presumed, then the instrument is to be read to the jury, and the question, like other matters of fact, is for their decision."

The rule contended for is sound and is not to be disregarded. It would have been a very simple thing to prove the authenticity of these letters not only by Cutting, but by

their writer who was in court and it should have been done. We cannot, however, under all the circumstances, say that the error was so prejudicial as to cause a miscarriage of justice or to justify a reversal.

The judgment is modified by reducing the same from $25,925 and costs to the sum of $22,952 and costs, with direction to compute interest from the date of the original judgment, and as thus modified the judgment and order are affirmed, appellant to recover costs on appeal.

Hart, J., and Ellison, J., *pro tem.*, concurred.