[Civ. No. 2413. Third Appellate District.—January 25, 1922.]

A. H. VAUGHAN, Respondent, v. COUNTY OF TULARE, Appellant.

[1] CONTRACT—HIGHWAY CONSTRUCTION—ACTION FOR BALANCE DUE—PERFORMANCE—FINDING—EVIDENCE.—In this action to recover a balance due for county highway construction, the finding that the work was done in accordance with the contract is supported by the evidence, which shows that the work was completed not only to the satisfaction of the representative of the county, but in substantial compliance with the terms of the contract.

[2] EVIDENCE—VIEW OF PREMISES—KNOWLEDGE GAINED.—Knowledge gained by the court from a view of the premises is independent evidence to be taken into consideration in determining the issues of a case.

[3] CONTRACT — HIGHWAY CONSTRUCTION — CONCLUSIVE EFFECT OF FINAL CERTIFICATE.—A provision in a contract for county highway construction that no certificate except the final certificate of final payment shall be conclusive evidence of the performance of the contract against any claim of the county is not conclusive evidence against the contractor as to the amount and value of the work, but is conclusive against the county.

[4] ID.—CERTIFICATE OF COUNTY SURVEYOR—IMPEACHMENT FOR FRAUD The final certificate of a county surveyor as to amount and value of the work done by a contractor in highway construction may be impeached for fraud or for gross mistake amounting to fraud.

[5] ACCOUNT STATED — CONCLUSIVE EFFECT.—A stated account is *prima facie* evidence only of the accuracy and correctness of the charges stated therein, and a mere admission that the account is correct, but is not an estoppel, and the account is still open to impeachment for fraud, mistake, or error unless the position of the opposite party has been altered to his prejudice.

[6] ID.—ITEMS NOT BARRED.—An account stated does not bar a recovery for items not within the contemplation of the parties when the settlement was made, nor items omitted by mistake.

[7] CONTRACT — ACTION FOR BALANCE DUE FOR HIGHWAY CONSTRUCTION—ACCOUNT STATED—PLEADING.—In an action to recover a balance due for county highway construction, the trial court was justified in ignoring the contention that a settlement made with the county engineer and the presentation of the claims and

3.  Presumption of correctness of account stated, note, 136 **Am. St. Rep.** 37.

their allowance constituted a stated account, where the action was brought and defended upon the original contract and an account stated was not pleaded in the answer.

APPEAL from a judgment of the Superior Court of Tulare County.   T. N. Harvey, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Fred C. Scott, I. H. Ham and W. W. Middlecoff for Appellant.

Lamberson & Lamberson and P. D. Nowell for Respondent.

BURNETT, J.—On July 15, 1918, the defendant entered into a written contract with White & Gaskill, copartners, for the construction of the Woodlake-Visalia division of a system of paved public highways in said county of Tulare.   To the plaintiff, by consent of the board of supervisors, this contract was regularly assigned.   The work was begun on August 22, 1918, and the entire division was completed and opened on April 22, 1919.   It seems unnecessary to set out the terms of the contract further than will hereafter appear.   Payments were made from time to time to respondent as the work progressed, and on May 29, 1919, he filed his claim with the board of supervisors for the sum of $10,129.19, being the balance which he claimed to be due.   This claim was rejected by the board on June 28th, and the complaint herein was filed on July 15, 1919.   On August 6th, following, defendant filed its answer, wherein it denied that plaintiff had completed all the work required by the provisions of the contract, particularly as to the requirement of a "four-inch concrete base."   A cross-complaint was also filed against Vaughan and his surety, American Indemnity Company, for damages in the sum of $15,109.70, claimed to have been suffered by the county through the negligence of the contractor in failing to construct said concrete base in accordance with the terms of the contract.   To this pleading an answer was filed, challenging the allegation as to defective construction, alleging that the work had been completed in accordance with the requirements of the contract and the orders and instructions of the duly authorized

officers, agents, and inspectors of said county, that the county, on March 22, 1919, had taken over the road, accepted it as constructed by said Vaughan, and ever since had operated it as a public highway. As a further answer it was alleged that ''while respondent Vaughan was doing the work of constructing the highway, the county of Tulare employed an inspector of construction to inspect the work and gave such inspector authority to supervise and direct the construction of the highway and that said inspector and the county surveyor did thereafter during all the time the work of construction was in progress, supervise and superintend the work of construction; that such superintendent was present at all times when the material furnished by the county of Tulare under the terms of the contract was being placed in said highway and that all of said work of construction was done and performed under the direct personal supervision of said inspector and said county surveyor and as directed by them and not otherwise; that all of said work was performed by the contractor in a good and careful manner to the entire satisfaction of the inspector and the county surveyor; that all the material furnished by the county out of which said material said highway was to be and was constructed was used by the contractor in constructing the highway and was so used with the full knowledge and consent of and under and pursuant to the orders and directions of such inspector and county surveyor and it would have been impossible to have made said highway of greater thickness than the same was made by the contractor out of the material furnished by the county of Tulare for the construction thereof, and that by reason of the facts alleged in said answer the county of Tulare ought not to be heard to complain of the thickness of said highway so constructed by the respondent Vaughan.'' Upon these material issues the court found in favor of plaintiff, and upon his first cause of action awarded him $10,129.19.

The second cause of action was based upon a contract between one J. S. Caldwell and said county for the construction of what was designated as the Woodlake-Elderwood division of the public highways, the contract having been assigned to plaintiff. For this work the court found there was due the sum of $2,601.72 in addition to what had been paid and entered judgment accordingly.

[1]   As to the first count the only contention that we need consider is that the evidence is insufficient to support the finding that the work was done in accordance with the contract.  As to this the county declares: "The plaintiff offered evidence of some engineers that the pavement was a good pavement, and evidence that it had been thrown open to public use.  But against this opinion evidence stands the physical facts that the pavement was not four inches thick." But we can determine the "physical facts" only by an examination of the record, and therein is disclosed abundant evidence to show that the work was completed not only to the satisfaction of the representative of the county, but in substantial compliance with the requirements of the contract.  It is true that certain slabs were introduced in evidence which were less than four inches in thickness.  They were samples of the pavement taken by the county surveyor from the division in question, but it is affirmed by respondent and not denied by appellant that these slabs "were broken out and not sawed out, and it was readily apparent that they had been frequently chipped and broken and were ragged in contour."  Besides, the area of any supposed deficiency was not shown, and in view of the opposing evidence for respondent we must assume that the defect, if any, was not of such extent as to impair the general efficiency of the work.  In this connection we may recall the testimony of the engineer in charge that a variance of one-fourth inch over an area equivalent to ten per cent of the work would be considered by him as permissible, and he and other experts testified that it was not humanly possible to lay concrete of an exact thickness over any considerable surface.

But be that as it may, respondent points out in his brief the testimony of various witnesses including the representatives of the county who had charge and direction of the work, together with certain circumstantial evidence that justify the trial court's finding.  It seems unnecessary to quote the record of this showing.  It is sufficient to state that said representatives, who had every opportunity for observing the work as it progressed, testified that all the material furnished by the county was used and that there was a compliance with all the specifications of the contract; certain experts also examined this division of the highway and expressed, as witnesses, the opinion that the work was

well and thoroughly done and would compare favorably with any highway in the state; others made perforations of the pavement at various points and took measurements of the thickness of the concrete, which resulted, according to the testimony of C. R. Sumner, a highway engineer of many years experience, as follows: "At sample number one we had 5 inches. At sample number 2 we had $4\frac{1}{2}$ inches. At sample number 3 we had $4\frac{1}{4}$ inches. At sample number 4 we had $4\frac{3}{4}$ inches, at sample number 5 we had $3\frac{7}{8}$ inches, at sample number 6 we had 4 inches, at sample number 7 we had $4\frac{3}{8}$ inches, at sample number 8 we had $5\frac{3}{8}$ inches. At sample number 9 we had $4\frac{1}{2}$ inches, at sample number 10 we had 4 1/16 inches, at sample number 11 we had $4\frac{1}{8}$ inches. At sample number 12 we had $4\frac{1}{2}$ inches"; the trial judge visited the division in question and there viewed the work in company with the county surveyor and counsel for the respective parties. As to this visit it is declared by respondent and undisputed by appellant "that measurements of various test holes mentioned in the testimony of several witnesses were made in the presence of the court." Naturally, in view of the interest at stake and the sharp conflict in the evidence, the trial judge would avail himself of the opportunity to examine as closely and thoroughly as possible the character of the work to ascertain if the claim of respondent was just. And there is reason to believe that this independent investigation of itself might lead to a safe and satisfactory conclusion as to the merits of the case. [2] Herein it is to be remembered that this knowledge thus obtained is evidence—and in a case of this kind, as above indicated, may be very potent evidence. In *Hatton* v. *Gregg*, 4 Cal. App. 537 [88 Pac. 592], it is said: "Both upon reason and the authority of *People* v. *Milner,* 122 Cal. 171 [54 Pac. 833], we are constrained to hold that the knowledge gained by the court from a view of the premises is independent evidence to be taken into consideration by the court in determining the issues of the case."

In *Wright* v. *Locomobile Company of America,* 33 Cal. App. 694 [167 Pac. 407], the main question was whether there had been a substantial compliance with the contract for the laying of a floor of a specified description in a building, and great importance was attached to the action of the trial judge in examining the premises himself. It

is implied in the opinion that this evidence might be considered sufficient to support the finding that the work was properly done. Indeed, since the knowledge thereby obtained is substantial evidence, it falls in the category of that which is binding upon an appellate court.

Among the findings of the court as to the second count is: "The said county surveyor did not, in making his final estimate as required by the terms and provisions of said contract and said specifications, include in said estimate any amount of yardage of oil cake moved by the plaintiff in excavating for said highway and the court finds that the said plaintiff did move, in excavating for said highway, 2890.8 cubic yards of oil cake and that said county surveyor mistakenly omitted and neglected to consider in making his estimate of the amount of yardage of earth and materials moved in the excavation of said road and in accordance with said plans and specifications said 2890.8 cubic yards of oil cake or any part thereof and did not include said yardage of oil cake in his final or any certificate made to said board of supervisors in accordance with the terms and provisions of said contract and the court finds that the said county surveyor should have included said 2,890.8 cubic yards of oil cake in the quantity of earth and material moved by said plaintiff and the said board of supervisors should have credited said plaintiff with the amount of 2,890.8 cubic yards."

[3] One of the claims of appellant is that by the terms of the contract and in accordance with the doctrine of *City Street Improvement Co.* v. *City of Marysville,* 155 Cal. 427 [23 L. R. A. (N. S.) 317, 101 Pac. 308], the final certificate of the county surveyor as to the amount and value of the work is conclusive against the contractor, although denying that the county is bound thereby. The particular provision of the contract upon which appellant relies as binding the contractor is article 22, which reads as follows: "That no certificate given, or payments made under this contract, except the final certificate of final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, against any claim of the first party, and that, not until the lapse of thirty-five days after acceptance of the work by the board of supervisors, and no payment shall be construed to be an acceptance of any defective work

or improper materials.'' Appellant claims that ''a correct reading'' of this section sustains the contention. We cannot understand how appellant reaches this conclusion. It is expressly provided therein that the final certificate is ''conclusive evidence of the *performance* of the contract'' and ''against any claim of the *party* of the *first part*,'' being the county. There is no specification that it shall be conclusive evidence of the amount due the contractor or against any claim of his. By implication, indeed, he is relieved from this conclusive effect of said certificate, and in article 23 following it was expressly provided that ''the payment of the final amount due under this contract''—not as recited by the certificate of the surveyor—''shall release the first party.'' We conclude that ''a correct reading'' of these provisions makes it more probable than the converse, that the final certificate was intended to be conclusive evidence, against the county, of the performance of the contract, and not against the contractor, of the amount due.

[4] At any rate, such certificate can be impeached for fraud, or for gross mistake amounting to fraud. (*American-Hawaiian Eng. etc. Co.* v. *Butler*, 165 Cal. 497 [Ann. Cas. 1916C, 44, 133 Pac. 280].) The finding of the court that nearly twenty-five per cent of the yardage on a big contract like this was mistakenly omitted would support the conclusion that a ''gross mistake'' was made.

Another contention is that ''the settlement made between the County Engineer and the presentation of the claims, and their allowance and payment constituted a stated account, and is final and conclusive under article 23 of the contract.''

In answer to this contention respondent declares: ''In the consideration of the above matter we desire to direct the Court's attention to the following facts, viz.: that the County of Tulare gathered and tabulated all data for calculating the yardage of earth moved on the Woodlake-Elderwood division; that such calculations were long and difficult and were carried out by the employees of the County; that such calculations were based upon surveys and data which were entirely inadequate and were grossly inaccurate; that changes in alignment and elevation were made of which no record was made or transmitted to the surveyor's office; that the claims of plaintiff (Sup. pp. 21–29) did not in any way

show what items were included as a basis of the yardage calculations; that the claims were prepared entirely by the officers of the County of Tulare and the act of respondent's agent, J. S. Caldwell, in verifying the claims was in compliance with the law concerning the presentation of claims and was done because Mr. Caldwell knew that at least the amount of the claim as prepared was due to Mr. Vaughan, although he did not have exact knowledge as to the amount of work due but believed that the allowance made by the engineer was insufficient." Appellant does not dispute the accuracy of this statement and we shall accept it as true. In fact, our examination of the record discloses support for it.

[5] It is not disputed that the rule as to an account stated is correctly declared in 1 R. C. L., page 217, as follows: "It is generally held that a person who merely renders an account to another is not precluded from denying its correctness where there has been no acceptance so as to make it an account stated, but a stated account was formerly held to be conclusive evidence of the correctness of the items contained therein as to both parties. Now, however, a stated account is held to be, as a rule, *prima facie* evidence only of the accuracy and correctness of the charges stated therein. It is a mere admission that the account is correct, but it is not an estoppel, and the account is still open to impeachment for fraud, mistake, or error unless the position of the opposite party has been altered to his prejudice."

[6] That an account stated does not bar a recovery for items not within the contemplation of the parties when the settlement was made, nor items omitted by mistake, is clearly established in this state. (1 Cal. Jur. 199; *Union L. Co.* v. *J. W. Schouten & Co.*, 25 Cal. App. 80 [142 Pac. 910]; *White* v. *Thompson*, 40 Cal. App. 447 [180 Pac. 953].)

Another view of the matter worthy of consideration is suggested by respondent as follows: An account stated constitutes a new contract. (1 Corpus Juris, 705–707; *Converse* v. *Scott*, 137 Cal. 239 [70 Pac. 13].) A promise to pay the amount ascertained to be due is a necessary ingredient of an account stated. (1 Corpus Juris, 697.) As a new contract its obligations would not be mutual if one party were bound and not the other. The county surveyor, who was one of the parties to this supposed account stated,

had no authority to bind the county of Tulare to pay the amount recited in said account, since the board of supervisors alone is clothed with the power to allow claims against the county treasury or to enter into such contracts, if, indeed, the authority exists at all to create any obligation against the county upon an account stated. (Secs. 4074–4079, Pol. Code; 1 Corpus Juris, p. 704; *City of Syracuse* v. *Roscoe,* 66 Misc. Rep. 317 [123 N. Y. Supp. 403]; *State* v. *Brown,* 10 Or. 215.)

Again, the action was brought and defended upon the original contract, an account stated not having been pleaded in the answer. Under such circumstances the stated account is waived. (1 Corpus Juris, 709; *Bump* v. *Cooper,* 20 Or. 527 [26 Pac. 848]; *Harrison* v. *Henderson,* 67 Kan. 202 [72 Pac. 878].) It necessarily follows that there is no merit in the claim of appellant that it was incumbent upon respondent to plead fraud or mistake in order to overcome the effect of such account. It appeared only in the evidence and there, as we have seen, plaintiff made his showing as to its true character.

[7] If the claim as prepared by the county surveyor may be considered as an account stated—of which there is at least grave doubt (*Richmond Dredging Co.* v. *Atchison, T. & S. F. Ry. Co.,* 31 Cal. App. 399 [160 Pac. 862])—for the reasons stated the trial court was justified in ignoring it.

The question remains whether the evidence supports the finding that plaintiff was entitled to compensation for 2,890.8 cubic yards of oil cake. Respondent sets out in his brief certain testimony of the county surveyor and deputy county surveyor, from which it is a fair inference that the "oil cake" was not included in the estimate of the amount of material removed, which was made by said county official and which constituted the basis for the claim that was allowed by the board of supervisors. It is not denied, as we understand it, that the oil cake was soft and unsuitable material that had to be removed, and for which removal the contract provided for compensation. The only difficulty was in ascertaining the amount of the yardage. As to that, plaintiff had the testimony of two experienced engineers who made an investigation of the highway, observed the oil cake, and computed the amount of it. Their testimony, while not amounting, of course, to mathematical demonstration, when

fairly considered, is sufficient to support the finding of the court. Besides, the trial judge visited this division as well as the other, and it is affirmed by respondent and not denied by appellant that he personally inspected deposits of oil cakes thrown aside on the right of way. His investigation probably satisfied him that the claim of respondent was just to the extent of 2,890 cubic yards.

There seems to have been a candid difference of opinion between the parties as to the amount of work done by the contractor, and on account of changes made in the alignment of the road and because imperfect records were kept, it was difficult to determine with accuracy the extent of the excavation and removal of material. The court was compelled to rely largely upon the opinion and computation of experts and its own observations, and we must hold that there was an honest and successful attempt to do justice to both parties.

The judgment is affirmed.

Hart, J., and Finch, P. J., concurred.