[L. A. No. 7712. In Bank.—March 29, 1928.]

AMERICAN FRUIT GROWERS, INC., OF CALIFORNIA (a Corporation), Appellant, v. CALVIN E. JACKSON et al., Respondents.

W. H. Wadsworth, J. N. Owen and Bordwell & Mathews for Appellant.

Scarborough, Forgy & Reinhaus and Fred Forgy for Respondents.

PRESTON, J.—This is a suit by plaintiff corporation against the defendant Calvin E. Jackson, as sheriff of Orange

County, defendant Fidelity & Deposit Company of Maryland being also included as surety on his official bond. The cause of action is for conversion of personal property, known as farm equipment, after plaintiff had made third party claim therefor in the regular way. The sheriff justified his seizure and detention of the property by virtue of a writ of attachment in his hands sued out in an action wherein the Irvine Company was plaintiff and H. J. Osborne was defendant. In other words, the property was seized by the sheriff under the said writ of attachment as the property of said Osborne. The court made findings against the claim of this plaintiff thereto, except as to three head of livestock found to be of the value of $240, giving plaintiff judgment only for this amount, with a small sum as damages for their detention. Plaintiff has appealed from the whole of the judgment and is here insisting that the findings, denying its claim to said property, are as a matter of law unsupported by the evidence.

We heartily concur with plaintiff in this contention. The learned judges of the district court of appeal were not unanimously in accord in the case. Their majority opinion held the findings properly supported, while Mr. Justice *pro tem.* Walter Perry Johnson, dissenting in an elaborate but learned and convincing opinion, held the evidence insufficient to support said findings. We would adopt this dissenting opinion were it not for the fact that we think the case does not merit such elaborate consideration. We shall, however, quote from it the following:

"Osborne leased from the Irvine Company certain farm lands which had previously been under lease to Roy D. Trapp, who had died. Part of the assets of Trapp's estate consisted of the equipment in question, which plaintiff purchased in September, 1920, for $10,000. Under date of September 1, 1920, plaintiff and Osborne entered into their agreement whereby, among other things, plaintiff agreed to let Osborne have the use of this equipment in his farming operations, and to advance him also such money as he might need for his crops; and Osborne in turn agreed to deliver his vegetables to plaintiff for sale on commission. The agreement further gave Osborne an option until July 1, 1921, to purchase the equipment at the cost price to plaintiff.

"Osborne continued his farming operations until the time of the Irvine Company's attachment in February, 1922, but did not at any time expressly or affirmatively exercise his option to purchase the equipment from plaintiff, nor did he ever receive a bill of sale or its equivalent. No transfer of title to the equipment took place by any overt act of the parties, nor was there any outward circumstance evidencing such transfer. The contention of the defendants is, however, that a change of ownership was brought about by reason of the fact that plaintiff sent Osborne certain transcripts from plaintiff's books of account, and on receipt of those transcripts Osborne remained silent.

"From these facts it is concluded not only that there was an exercise of the option by Osborne, but that, without payment of a single dollar, the title to ten thousand dollars worth of plaintiff's property was forthwith bestowed on Osborne and placed at the disposal of his creditors."

From September 1, 1920, to February 18, 1921, the option account and the vegetable account were kept separate. On the latter day a Mr. Fogg, sent to California by plaintiff's parent company, directed plaintiff, without the knowledge or co-operation of Osborne, to combine the two accounts, giving in writing an explanation as follows: "To combine accts. This is purely a suspense item but transferred to Osborne's Acct. for the purpose of showing at all times amount of money invested in A F G in this project." Mr. Fogg himself testified: "I wanted this information in a concrete form to guide me in making my advances for this corporation."

At the time these two accounts were consolidated Osborne was indebted to plaintiff for advances in his farming operations in the sum of $9,702.91. On March 17th following, plaintiff rendered a statement to Osborne, containing the item last above mentioned, together with certain additional advances, and then appeared the following: "Trapp Estate equip. $10,000.00." With said item added the debit balance was at said time $21,340.41. Another statement was rendered on April 30, 1921, showing a less balance, to wit: $16,888.28. On July 15, 1921, another statement showed a balance of $15,112.42. On December 8, 1922, another statement was rendered showing an increased balance, to wit: $21,752.41. On February 14, 1922, a reduced balance of

$18,871.52 was shown. Following the last-mentioned debit balance said attachment was levied.

It will be seen from this account that Osborne was continuously in arrears on his vegetable account and was in no position to buy said equipment. To this evidence must be added the extrajudicial statements of witnesses Breckenridge and Cogan, the secretary-treasurer and assistant super-intendent, respectively, of the Irvine Company, to the effect that Osborne said to them that he owned the property, or, as Mr. Cogan put it, that he "considered himself" to be the owner of said property.

■ In considering whether this evidence is sufficient to support the findings, it is necessary to keep in mind the fact that the defendant sheriff is not occupying the position of a purchaser or encumbrancer for value. He could at most take under the writ of attachment only such rights in said property as Osborne had. The transaction is to be viewed as though the suit were by plaintiff in this action against the said Osborne as defendant. In this connection it may be observed that neither plaintiff nor said Osborne claim the exercise of the said option, or that a sale of said equipment was made. Plaintiff denies all intention of selling or delivering constructively or otherwise said property to said Osborne. Likewise said Osborne admits that he never thought he had any interest in the property and never claimed to own it, as he never had exercised the option to purchase it.

■ It appears from the statements of counsel that the court below decided that the rendition of these statements from time to time to Osborne constituted an account stated between plaintiff and said Osborne, and for this reason it was effective to pass the title, but this position apparently is not seriously insisted upon in this court, for it is clear that a statement rendered cannot be said to be an account stated unless it is intended to be such and expressly or impliedly is assented to as such by the party to whom it is rendered. There is in the case before us no element of finality, as the parties were still transacting business. These statements were sent periodically and business was continued between them as before. There is no ground whatever for the contention that the account was rendered and intended to be an account stated, or that said Osborne, either ex-

pressly or impliedly, considered that it was such. (*Mercantile Trust Co.* v. *Doe,* 26 Cal. App. 246, 254 [146 Pac. 692]; *Richmond D. Co.* v. *Atchison etc. Ry. Co.,* 31 Cal. App. 399 [160 Pac. 862].)

But it is earnestly insisted that these statements, when taken in connection with the declarations of Osborne, constituted enough evidence to warrant a finding that Osborne had exercised the option made and provided for in said contract of September 1, 1920, reading as follows: "The shipper hereby agrees to give to the grower an option to purchase the farming equipment on said ranch at invoice price, as shown by inventory when purchased from the Roy D. Trapp Estate; said option expires July 1st, 1921." This option not only requires that it be exercised by a certain date, but, if exercised, it would have to be followed by some evidence of sale thereunder. Inasmuch as neither of the parties contend that the option was ever exercised or that there was ever perfected any sale thereunder or at all, we fail to see how these statements can be held sufficient evidence of a sale.

 The statements attributed to Osborne, made without the presence of plaintiff or any of its officers or agents, are clearly not evidence that can be considered in this case for any purpose whatsoever, being nothing more at most than extrajudicial conclusions. The case of *Wilson* v. *Hotchkiss,* 171 Cal. 617 [Ann. Cas. 1917B, 570, L. R. A. 1916F, 389, 154 Pac. 1], is relied upon as authority for the admissibility in evidence of such declarations, but that case is clearly not in point. The action there was one by the assignee of a seller against the buyer, wherein it was contended that the seller had tendered to the buyer certain personal property, with the intention of passing title thereto to him. The declarations of the buyer that he owned the property would be admissible as declarations against his own interest in such case. Where the action is between the alleged seller and a third party the hearsay statement of the alleged buyer that he has purchased the property constitutes no evidence of a sale as against the absent seller.

Judgment reversed.

Curtis, J., Langdon, J., Shenk, J., Richards, J., Waste, C. J., and Seawell, J., concurred.