[Civ. No. 4625.   Second Appellate District, Division One.—May 5. 1927.]

IDA MAY RUSSELL, Appellant, v. RILEY & PETERSON (a Copartnership) et al., Respondents.

[1] APPEAL — CONFLICT OF EVIDENCE — FINDINGS.—An appellate court will not disturb findings of the trial court when there is a substantial conflict of evidence on material points and when there is some evidence to support the findings.

[2] CONTRACTS—REFORMATION OF INSTRUMENTS—MISTAKE—EVIDENCE —FINDINGS.—In an action for the reformation of an agreement and for damages, where plaintiff claimed defendants agreed, after using her land for quarry purposes and for a camp, to leave the land in the same condition it was found, to remove all debris,

1.   See 2 Cal. Jur. 921; 2 R. C. L. 194.
2.   See 6 Cal. Jur. 381; 6 R. C. L. 914.

blast foundations for rock-crusher, replow the roads, and fill the cesspools, the evidence was sufficient to sustain the finding that there was no mutual mistake in drafting the contract which omitted such matters, since the contract as written superseded the oral negotiations therefor, under section 1625 of the Civil Code.

[3] ID.—SETTLEMENT BY CHECK—EVIDENCE—FINDINGS.—In such action, the evidence was sufficient to sustain the finding that plaintiff accepted defendants' check in full settlement of her claim against them for such damage as she may have sustained to her land and buildings by reason of debris, excavations, roads or fire.

[4] ID.—ACCEPTANCE OF CHECK—INDORSEMENT.—In such action, where it was shown that plaintiff could read and was capable of managing her own affairs, she was bound by accepting, signing, and indorsing defendants' check on which was indorsed, "The payee's indorsement hereon constitutes receipt in full of within account," in the absence of satisfactory evidence as to fraud or mistake.

[5] ACCORD AND SATISFACTION—PLEADING—EVIDENCE.—One who relies upon an accord and satisfaction must plead and prove both.

[6] ID.—PROOF BY PLAINTIFF—PAYMENT—RELIANCE BY DEFENDANT—PLEADING.—The rule requiring an accord and satisfaction to be specifically pleaded before it can be availed of as a defense is subject to the exception that if the plaintiff, as a part of his case, proves the payment and the circumstances under which it was made, tending to show an accord and satisfaction, the defendant may rely upon the facts thus shown as an accord and satisfaction, though not pleaded as such in the answer.

[7] ID.—COMPROMISE AND SETTLEMENT—AGREEMENT TO ACCEPT LESSER SUM.—Where an agreement to accept in full payment a sum less than the amount in dispute is shown to have been fully executed by the payment and acceptance of the lesser sum, the original obligation is extinguished.

---

4. Receipt as evidence of accord, note, 100 Am. St. Rep. 427. Acceptance of remittance of part of the amount of an unliquidated or disputed claim accompanied with the statement that it is "in full," or words of similar import, as assent to its receipt in full payment, notes, 14 L. R. A. (N. S.) 443; 27 L. R. A. (N. S.) 439. See, also, 1 R. C. L. 196. Acceptance of remittance by check purporting to be "in full" or accompanied by indications of debtor's intention that it is to be so regarded, note, 34 L. R. A. 1035. See, also, 1 R. C. L. 186.

5. See 1 Cal. Jur. 135; 1 R. C. L. 202.

6. See 1 Cal. Jur. 136.

7. Law of accord and satisfaction, note, 100 Am. St. Rep. 390. See, also, 5 Cal. Jur. 403; 1 R. C. L. 201.

[8] ID.—ACCEPTANCE OF CHECK—STATUTE OF FRAUDS.—Under section 1524 of the Civil Code, the acceptance of a check in full satisfaction of a disputed debt is not required to be in writing.

[9] APPEAL—FINDINGS CONTROLLING JUDGMENT—FAILURE TO FIND ON OTHER ISSUES.—Where the findings of fact necessarily control the judgment, failure to find on other issues is not error; and where the facts found show that plaintiff is not entitled to judgment, a finding on other issues is immaterial and unnecessary. .

---

(1) 4 C. J., p. 884, n. 37.    (2) 34 Cyc., p. 988, n. 37.    (3) 12 C. J., p. 366, n. 56.    (4) 12 C. J., p. 343, n. 50.    (5) 1 C. J., p. 573, n. 3.    (6) 1 C. J., p. 574, n. 6.    (7) 1 C. J., p. 561, n. 80.    (8) 1 C. J., p. 528, n. 66.    (9) 38 Cyc., p. 1969, n. 99.

APPEAL from a judgment of the Superior Court of San Diego County. W. P. Cary, Judge. Affirmed.

The facts are stated in the opinion of the court.

L. E. Dadmun for Appellant.

George H. Stone for Respondents.

McLUCAS, J., *pro tem.*—Plaintiff's first amended complaint sets forth two causes of action, the first being for the reformation of an agreement between the parties and to recover damages for the alleged breach thereof, and the second being an action for damages by reason of alleged negligence of the defendants in building a fire on the land of plaintiff and permitting the same to get beyond their control and to burn down plaintiff's fence. The answer denies the material allegations in both causes of action, and pleads as a further defense thereto payment to the plaintiff on April 12, 1921, of the sum of $213.60 as "settlement in full for all claims to damage of property real estate and personal to date." Plaintiff appeals from the judgment rendered for defendants.

[1] The evidence in this case is in sharp conflict. The rule is established by a host of decisions that an appellate court will not disturb findings of the trial court when there is a substantial conflict of evidence on material points and when there is some evidence to support the findings. (2 Cal.

---

9.   See 2 Cal. Jur. 1033; 2 R. C. L. 243.

Jur., sec. 543, p. 921.)   It remains, therefore, to be determined whether the record shows there was some evidence to support the findings.  [2]  Appellant contends that the findings hereinafter quoted were not sustained by the evidence:

"4. That said agreement Exhibit 'A' was the contract and contained the terms of agreement as contemplated by the parties prior to its execution.

"5. That there was no specific agreement between the parties that defendants should put the land back in the same condition it was at the time they went onto it, nor that they would plow up all the roads they might make on or across plaintiff's land, or that they would refill any holes or excavations made, or that they would haul away the debris; that no agreements as to damages were made other than those contained in the contract, viz.: To in no way injure or damage the buildings or farm land or farm property of plaintiff.

"6. That there was no mutual mistake of the parties in the terms of the agreement.

"7. That such damage as plaintiff may have sustained to her farm land and buildings by reason of debris, excavations, roads, or fire, was settled in full by agreement between plaintiff and defendants and paid in full by defendants.

"8. That pursuant to such agreement of settlement defendants on April 12th, 1921, gave plaintiff voucher check for $213.60 which recited therein that it was in 'settlement in full for all claims to damage of property, real and personal to date.'

"9. That said check was received by plaintiff as in settlement in full of her damage as therein set forth, was knowingly endorsed by her under the printed words 'payee's endorsement hereon constitutes receipt in full of within account.  Endorsement must be made in ink and only by person having authority.'

"10. That the fire which injured plaintiff's fence was not built on plaintiff's land by defendants and was not negligently or carelessly permitted by defendants to get away or from under their control, and did not injure or·damage plaintiff's buildings or farm property."

Appellant, in support of her attack on findings 4, 5, and 6, which relate to the terms of the agreement, quotes liber-

ally from the testimony of the plaintiff. Plaintiff testified that she orally agreed with defendant Riley for the use of her land for quarry purposes and for the maintenance of a camp thereon, for a consideration of $200; that defendant agreed to leave her land in the same condition he found it, with the exception of the quarries; remove all debris; blast foundations of rock-crusher, replow the roads, and fill up the cesspools; that defendant Riley thereupon prepared a written agreement and the plaintiff signed the agreement without reading it, upon the assurances made by defendant Riley that the agreement contained all the terms and conditions agreed upon. Plaintiff admitted that she noticed that her daughter's name had been placed in the instrument, instead of plaintiff's name, and that she saw defendant Riley write in her name, the amount of the consideration and the description of the land, before she signed the agreement; that the first time plaintiff realized that certain conditions had been left out of the agreement was when she read the same in the presence of her daughter some three or four weeks after it had been signed, and that in the presence of her daughter she spoke to defendant Riley regarding the fact that the agreement did not contain all the terms and conditions as to plowing the roads, removing debris, etc., and that defendant Riley stated to her: "Oh, that doesn't amount to anything. I am an honorable man; I always do all those things. Well, that don't amount to anything; that will be all right." This statement was corroborated by the testimony of plaintiff's daughter. The written contract contained no provision as to removing debris, blasting foundations, filling cesspools or replowing roads; but it did contain the provision wherein the defendants agreed: "to maintain all roads which they use on her said property for taking out said material, and agree to keep the property about their camp in a clean, sanitary condition; and that the said rock and sand removed and the removal thereof, shall in no way injure or damage the buildings or farm land of said first party." On the other hand, defendant Riley testified that he held a conversation with the plaintiff as to the use of her land for quarry and camp purposes for a consideration of $200 and walling up a well; that plaintiff told him to get everything in writing; that he prepared a contract and returned with it a week later; that plaintiff

read it aloud and discussed it before she signed it; and that plaintiff objected only as to the consideration, and said nothing about cesspools, nothing about damages for roads, and nothing about damages to her property, except from blasting. The defendant denied the subsequent conversation, as testified by plaintiff. Defendant denied that he told plaintiff he would plow up the roads and put the land back in the same condition, even though that had been left out of the agreement. The witness McLean testified that the agreement was signed in his presence after plaintiff looked at it and discussed it with defendant Riley. He could not say whether plaintiff read the contract. It thus appearing that the testimony is in direct conflict as to the substance of the conversation preceding the execution of the contract and as to the circumstances surrounding the signing of the agreement, if plaintiff read the contract, the court would be justified in concluding there was no mistake of facts as to its contents, and plaintiff is bound thereby. The substance of the testimony of the defendant Riley is that the written contract contained the whole and actual agreement of the parties. Applying the rule heretofore stated, we find there is some evidence to support the finding, and that, therefore, there is no ground for reformation of the agreement. In *Burt* v. *Los Angeles Olive Growers' Assn.*, 175 Cal. 668, it is said, at page 675 [166 Pac. 993, 996]: "Where so solemn an instrument as a written contract is sought to be reformed for mistake, 'evidence of the mistake must be clear and convincing, and not loose, equivocal, or contradictory leaving the mistake open to doubt.' (*Lestrade* v. *Barth,* 19 Cal. 675.) Every presumption in equity favors the view that such a contract as this, thus deliberately entered into, expresses the true intent and meaning of the parties. The burden of showing the contrary is upon the party seeking to avoid its plain terms. Under this evidence it cannot be successfully contended that the mistake was mutual or that it was induced by plaintiff by the suppression of any term in the contract, or even that it was known to plaintiff, or suspected by plaintiff, that defendant did not understand its terms. Nothing in the writings of defendant to plaintiff after the execution of the contract so establishes, and plaintiff's own testimony is to the contrary. This testimony is

aided by the legal duty imposed upon a party to read such a contract before executing it. (*Hawkins* v. *Hawkins,* 50 Cal. 558; *Metropolitan Loan Assn.* v. *Esche,* 75 Cal. 513 [17 Pac. 675]; *Pope* v. *Armsby Co.,* 111 Cal. 159 [43 Pac. 589].)'' The written contract superseded all oral negotiations which preceded the execution of the contract. (Civ. Code, sec. 1625.)

[3] Appellant insists that the defendants failed to establish payment by a preponderance of the evidence. The findings of the court on the subject of payment appear in paragraphs 7, 8, and 9 of the findings hereinbefore quoted. Plaintiff and the witness McNett testified that at the time of the settlement plaintiff presented to defendant Riley a statement of her claims, which was examined by said defendant, and that Riley agreed, in addition to paying plaintiff $213.60, to plow up all roads, fill all cesspools and excavations, furnish seventeen fence posts, and haul away all debris. Defendant Riley testified that at the time of settlement the plaintiff presented an itemized statement of her claims for various articles used or destroyed, fixing up roads, removing sand and stone at the quarry; that he told her the contract did not require him to fix the roads; that ·he was not responsible for the damage to the fence and would not furnish the fence posts or build the fence; that the cesspools were all filled up at the time of the settlement; that nothing was said about removing concrete foundations; that he did not set any fire or order anyone to set a fire on the land; that plaintiff afterward ordered defendant to remove the rock at the quarry; that he told her the state highway would take the rock and the sand at the crusher, and he would allow her for it whatever the state would permit; that he told plaintiff he absolutely refused to pay for the roads, and that he would go to court before he would do that; that he was willing to pay for all he should ·pay for, and would not pay for anything he did not owe; that plaintiff said she would rather settle the matter out of court; that she felt she had been injured and was willing to adjust the matter; that he gave her his personal check for $213.60 as payment in full. Subsequently, on April 12, 1921, the firm check of Riley & Peterson for $213.60 was substituted for Riley's personal check and delivered to plaintiff by defendants' bookkeeper, Vallin, who testified that he filled out

a portion of the check in plaintiff's presence, with her pen and ink, and told her what he was writing. The witness testified as follows: "Q. What part of it was written out in her presence with her pen and ink, read the words. A. 'April 12, 21, Mrs. I. M. Russell.  $213.60'—in figures, then written out, and on the reverse side, 'April 12, settlement in full for all claims to damage for property, real estate and personal to date,'—with the amount in dollars and cents.'' The check also contained the words, "being in full payment of within account." The plaintiff testified that after Vallin had given her the check, he asked her to return it, saying: "I want to make a memorandum of what that is for"; that she handed him the check and that he wrote something on it and handed it back to her; that she did not read it. On April 22, 1921, plaintiff cashed the above check, indorsed in the following words appearing on the reverse side of the check: "The payee's indorsement hereon constitutes receipt in full of within account." Plaintiff received the check on April 12, 1921, but made no demand for additional settlement until January, 1922. Plaintiff was able to read. [4] An examination of the record discloses that the trial court was justified in concluding that the plaintiff was capable of looking after her own affairs, and having received the check in this unusual form, having kept it for eleven days, and then having indorsed the check as a receipt in full, that the plaintiff could not possibly have overlooked the fact that the check was given as payment in full. Plaintiff must read, since she could, and in the absence of satisfactory evidence as to fraud or mistake, plaintiff is bound by what she accepts, signs, and indorses. (*Burt* v. *Los Angeles Olive Growers' Assn., supra; Smith* v. *Occidental etc. Steamship Co.,* 99 Cal. 462, 470 [34 Pac. 84].) We believe payment was shown by the defendants by a preponderance of the evidence. We find no error in the finding of the trial court that payment in full was made by defendants.

[5] Appellant argues that the position advanced by defendants as a matter of law is accord and satisfaction, and not payment in full; that accord and satisfaction was not pleaded, and therefore could not be proved. The general rule is that he who relies upon an accord and satisfaction must plead and prove both. (*Berger* v. *Lane,* 190 Cal. 443

[213 Pac. 45].) In the instant case, the answer alleged as follows: "As a further and separate defense the defendants allege that on April 12th, 1921, they paid to the plaintiff the sum of $213.60 which sum was paid to plaintiff and received by her and receipted for by her in 'settlement in full for all claims to damage of property real estate and personal to date'; that no work of any kind was done upon said property by defendants subsequent to said date, no rock crushed, no roads made, no excavations dug." In *B. & W. Engineering Co.* v. *Beam,* 23 Cal. App. 164 [137 Pac. 624], where in the amended answer it was specifically pleaded that plaintiff's assignor had accepted a certain sum of money in full settlement and extinction of the obligation sued upon, the court said: "Upon principle the defense of accord and satisfaction at the very best requires nothing more to be pleaded than the payment and acceptance, upon a mutual agreement express or implied, of a certain sum of money or other thing of value in full settlement and satisfaction of a pre-existing and previously disputed obligation." [6] Conceding, without deciding, that the pleading in the present case does not fully meet these requirements, yet the rule requiring an accord and satisfaction to be specifically pleaded before it can be availed of as a defense is subject to the exception that if the plaintiff, as a part of his case, proves the payment and the circumstances under which it was made, tending to show an accord and satisfaction, the defendant may rely upon the facts thus shown as an accord and satisfaction, though not pleaded as such in the answer. (*B. & W. Engineering Co.* v. *Beam, supra.*) In *Looby* v. *Village of West Troy,* 24 Hun, 78, it is said: "The objection taken by the plaintiff that the settlement of accord and satisfaction had not been pleaded cannot prevail, because the plaintiff himself chose to prove the fact of payment in aid of his own case. This opened the subject. Indeed the plaintiff, under defendant's objection, also proved the conversation between himself and the president before the warrant had been given in evidence. He has no right to object that all the facts connected with the payment were shown."

[7] In the case at bar plaintiff chose to prove the fact of payment in aid of her own case; also, the conversation between herself and defendant Riley before the check had been given in evidence. Accordingly, plaintiff has no right to

object that all of the facts connected with the payment were shown. The check accepted by the plaintiff contains the words, "being in full payment of within account," and "settlement in full for all claims to damage for property real estate and personal to date"; and above plaintiff's indorsement the words, "payee's indorsement hereon constitutes receipt in full of within account." If the transaction be considered as one of accord and satisfaction, then the rule is well settled that where an agreement to accept in full payment a sum less than the amount in dispute is shown to have been fully executed by the payment and acceptance of the lesser sum, the original obligation is thereby extinguished. (*B. & W. Engineering Co.* v. *Beam, supra.*)

[8] It is insisted that the acceptance of the check for $213.60 could not constitute satisfaction unless expressly so accepted in writing. In support of this contention we are cited to section 1524 of the Civil Code, which reads: "Part performance of an obligation, either before or after a breach thereof, when expressly accepted by the creditor in writing, in satisfaction, or rendered in pursuance of an agreement in writing for that purpose, though without any new consideration, extinguishes the obligation." This question was raised in *B. & W. Engineering Co.* v. *Beam, supra,* and was decided adversely to appellant's contention. The court said: " . . . it is certain that section 1524 of the Civil Code has reference only to agreements of release and satisfaction made in cases where the obligation is neither doubtful nor disputed, and has no application to an *executed* agreement of accord and satisfaction founded upon the settlement and extinction of a disputed debt. (*Simmons* v. *Hamilton,* 56 Cal. 493; *Rued* v. *Cooper,* 119 Cal. 463 [51 Pac. 704]; *Flaningham* v. *Hogue,* 59 Ill. App. 315; *Reynolds* v. *Silvers,* 17 N. J. L. 275; *Farmers' Bank, etc.,* v. *Blair,* 44 Barb. (N. Y.) 641.)" In *Berger* v. *Lane,* 190 Cal. 443 [213 Pac. 45, 47], the court says (page 447): "The general rule, which is but an amplification of our code sections (Civ. Code, secs. 1521, 1523) defining satisfaction and accord, is 'that where the amount due is in dispute and a check less than that claimed is sent to the creditor with a statement that it is sent in *full satisfaction* of the claim, and the tender is accompanied by such acts or declarations as amount to a condition that if the check is accepted at all it is accepted in full satisfaction of

the disputed claim, and the creditor so understands, its acceptance by the creditor constitutes an accord and satisfaction even though the creditor states at the time that the amount tendered is not accepted in full satisfaction.' (*Lapp-Gifford Co.* v. *Muscoy Water Co.*, 166 Cal. 25 [134 Pac. 989]; *B. & W. Engineering Co.* v. *Beam*, 23 Cal. App. 164 [137 Pac. 624].)'' The fact that plaintiff made further demands from defendants eight months after she had accepted the money as payment in full does not make the transaction a part performance of the obligation. Plaintiff was bound by her settlement in full in accepting the check. The decisions cited by appellant to the effect that the giving of a check for an antecedent debt is not absolute payment in the absence of express agreement are beside the point. Here the check was not only accepted, but also cashed. In this case the question does not arise as to whether the check itself, as distinguished from the cash represented by the check, is to be taken as absolute payment.

[9] Appellant states that no findings were made by the court upon the second cause of action, and that therefore plaintiff is entitled to a reversal. Appellant says that the second cause of action did not directly arise out of the contract, and that plaintiff seeks to recover in the second cause of action for damages sustained by reason of the unlawful and negligent way in which the defendants permitted a fire to burn and destroy her fence and trees. However, the second cause of action contains no allegation as to damage to trees. It does incorporate paragraphs 1, 2, 3, and 4 of the first cause of action, in which the contract and the mutual mistake of the parties are alleged, and then alleges: ''That the above named defendants after making and entering said agreement, herein alleged and set forth and referred to, and in pursuance thereof, entered upon the land of said plaintiffs and while said defendants were upon said land of said plaintiff, pursuant to said contract and agreement, and without any authority, permission, or consent of said plaintiff, did build a fire upon the land of said plaintiff, and negligently and carelessly permitted said fire to get away and from under their control, and said fire did burn down, consume and destroy, a quarter of a mile of fence, to the plaintiff's damage in the sum of three hundred dollars ($300).'' While it does not specifically appear from the

findings that plaintiff's fence was not destroyed, yet it does appear that the fire was not built on plaintiff's land by defendants and was not negligently permitted to get away and from under their control, and did not injure plaintiff's buildings or farm property. The court found: "That such damage as plaintiff may have sustained to her farm land and buildings by reason of debris, excavations, roads, or fire, was settled in full by agreement between plaintiff and defendants and paid in full by defendants." The contract between the parties provided that the removal of rock and sand "shall in no way injure or damage the buildings or farm land of said first party." Where the findings of fact necessarily control the judgment, failure to find on other issues is not error. The facts found show that plaintiff is not entitled to judgment, and render any finding on the other issues immaterial and unnecessary. (*Fogg* v. *Perris Irr. Co.,* 154 Cal. 209, 219 [97 Pac. 316]; *Sharp* v. *Pitman,* 166 Cal. 501, 505 [137 Pac. 234].)

There being no prejudicial error, it is ordered that the judgment be affirmed.

Conrey, P. J., and York, J., concurred.