[Civ. No. 5908. Third Appellate District.—March 8, 1938.]

WESTERN TALC COMPANY (a Corporation), Appellant,
v. GEORGE BLAUFUSS, Respondent.

Calkins, Hagar, Hall & Linforth and Nathan F. Coombs for Appellant.

Rutherford, Rutherford & Rutherford for Respondent.

PLUMMER, J.—The complaint in this action contains two counts. The first count alleges that within two years last past defendant became indebted to plaintiff in the sum of $570, for goods, wares and merchandise, to wit: 38,000 pounds of bentonite at an agreed price of $30 per ton, sold and delivered by plaintiff to defendant at the special instance and request of defendant. The second count in the complaint reads as follows: "That within two years last past, in the City of Napa, County of Napa, State of California, an account was stated between plaintiff and defendant, and upon such statement a balance of $570 was found to be due to plaintiff from said defendant which said defendant then and there agreed to pay to the plaintiff."

The first answer of the defendant contains a general denial of the allegations contained in the complaint, and also a cross-complaint in which the defendant asked for damages in the sum of $1336.61, for and on account of plaintiff's failure to deliver the product ordered by the defendant. During the course of the trial the defendant filed an amended answer in which it set up a defense to the plaintiff's alleged cause of action on a contract stated, to wit: That the alleged promise of the defendant to pay the plaintiff the sum of $570 was made through mistake and at a time when the defendant did not know that the plaintiff had failed to ship the kind and quality of merchandise theretofore ordered by the defendant from the plaintiff, but had shipped to the defendant an entirely different product.

The defendant asked judgment, first: That the plaintiff take nothing by reason of its action, and second, that it recover of and from the plaintiff the damages alleged in the cross-complaint.

Upon this appeal no question is presented as to the sufficiency of the evidence to sustain the judgment for damages in favor of the defendant, if the defendant is entitled

to any judgment. Upon this appeal the plaintiff relies exclusively upon a certain letter and telegram hereinafter set forth, contending that the evidence introduced in the case was for the purpose of varying a written contract, and therefore was inadmissible.

It is also claimed by the appellant that the order for the merchandise to be delivered, its quality and kind, was definitely fixed by the telegram, to wit: That it should be according to sample without any designation or qualifying words as to the grade or quality of the sample. The contention of the plaintiff is not made exactly in the words which we have stated, but is to the same effect.

It appears that the letter which we shall hereinafter set forth was received by the defendant, and immediately thereafter a telegram, which we will set forth, was sent by the defendant to the plaintiff. However, immediately following the telegram, which stated that a letter would be written in connection with or following the telegram, the defendant boarded a train for Los Angeles, went to the office of the plaintiff in that city, and there, in conversation with the president of the plaintiff, specified the kind and quality of the material which he desired. On the part of the plaintiff it is alleged that what took place at this visit is no part of the order. However, a letter written by the plaintiff to the defendant directly controverts this contention. The subject of the controversy is a clay material found near Barstow, in the state of California. The material desired by the defendant, and theretofore purchased from the successors of the plaintiff, was and is known as "Bentonite No. 1"; that this "Bentonite No. 1" was used by the defendant in making a preparation for the softening of water, and sold by him to customers engaged in the laundry business; that this material must be sufficiently pulverized or ground to admit of its passing through a 200-mesh screen, practically as fine as flour.

The record shows that prior to the receipt of the letter which we are about to quote, the defendant had been making some inquiries of distributing agents in Los Angeles, as to where he could obtain "Bentonite No. 1" to use in his business. Following this, a letter was written by the president of the plaintiff to the defendant, which letter is in these words:

"Western Talc Company
"Producers and Distributors of
"Non-metallic Materials.
"Custom Grinding
"1901–11 East Slauson Avenue
"Los Angeles, California.

 . "June 5, 1935.

"Western Cider Works,
 "Napa, California.

"Gentlemen:

"We are sending you today, by freight, two bags of unground No. 1 Bentonite. This material is mined from the same property and we believe is the same grade as that which we were mining and selling to you in 1928 and 1929.

"As you will recall, we several years ago discontinued the operation of that particular Bentonite property. However, we still have the property, and can arrange to ship you the ground product, provided we could have an order of from fifteen to twenty tons. In order to get this ore out it will necessitate our sending a special crew and opening up the mine. Should you want this material, we will quote you at the price of $30.00 per ton, f.o.b. Los Angeles.

"Kindly let us know promptly whether or not you will want us to get this material out for you, and if you do, we will go right after it, and should be able to make shipment within a week or ten days after we receive your order.

 "Yours very truly,
 "(Signed) WESTERN TALC COMPANY
 "By F. H. SAVELL
 "F. H. SAVELL."

Upon the receipt of this letter a telegram in the following words was sent from Napa to the plaintiff in this action:

 "Western Union

 (50).

"Received at 5973 Avalon Blvd., Los Angeles Calif.
"Telephone AXridge 1937 Century 1935 Jun 8 A. M. 8:52
"SJ 41 9XC—Napa, Calif. 8 837A
"Western Talc Co.
"1901 East Slauson Ave,
"Will take fifteen tons like sample Rush Letter follows.
 "WESTERN CIDER WORKS."

Immediately after the foregoing telegram was forwarded to the plaintiff the defendant, as hereinbefore stated, went to Los Angeles, visited the office of the company and had a conversation with the president of the company relative to the quality of the material that could be used in the business conducted by the defendant, and the quality necessary for him to receive in order that it might be of any use to the defendant. It may be here stated that the two bags of sample material sent by the plaintiff to the defendant contained unground material, and therefore could not be tested and its quality or grade or usefulness determined by the defendant, as he had no machine with which to grind the same to the required fineness. Realizing this the defendant, as stated in his testimony, went to Los Angeles to make the order for the material more definite and certain.

Following the visit of the defendant to the plaintiff's office in Los Angeles, the plaintiff shipped 38,000 pounds of material taken from its mine in Barstow, to the defendant at Napa. We set forth the invoice of this shipment, to wit:

"Form 103 7–34 2M

Invoice.

Western Talc Company

Producers and Distributors of Non-Metallic Materials

Custom Grinding

1901–11 East Slauson Avenue

Lafayette 2129

Los Angeles, California

Sold to Invoice No. 10779
Western Cider Works, Your Order No.
Napa, Calif. D. O. No. 14925
Terms: Net Cash. Car No.
38,000 lbs Bentonite #1. @ Route LA & Long Beach
30.00 per ton F.O.B. L. A. Dispatch Line.
Harbor 570.00"

This invoice describes a shipment as "38,000 lbs. of Bentonite No. 1", thus attempting to certify to the quality of the material shipped.

As to when the order was finally given, and what amounted to the order, and whether the plaintiff relied upon the telegram or upon the verbal order or subsequent order given by

the defendant to the plaintiff, we set forth a letter written by the president of the plaintiff to the defendant, to wit:

"Western Talc Company
"Producers and Distributors of
"Non-metallic Minerals
"Custom Grinding
"1901–11 East Slauson Avenue
"Phone Lafayette 2129.
"Los Angeles, California.
"July 31, 1935.

"Western Cider Works,
"Napa, California
"Attention: Mr. Blaufuss.

"Gentlemen:

"We respectfully direct your attention to our invoice No. 10779 of June 19th, in the amount of $570.00.

"According to the terms for payment, upon which you agreed when you were in our office and placed the order with us, you were to pay one-third cash upon presentation of invoice, one-third in thirty days, and the balance in sixty days. As yet, we have not had the pleasure of receiving any remittance from you whatever, and inasmuch as we went to considerable expense in the securing of this material especially for you, we would be very appreciative if you would forward us your check in accordance with the terms of payment.

"Thanking you in anticipation of your prompt compliance, we are,

"Yours very truly,
"WESTERN TALC COMPANY
"By F. H. SAVELL.
"F. H. SAVELL."

This letter, as we have stated, directly controverts the contention made by the appellant that the telegram set forth herein was the complete order for the shipment of the material made by the plaintiff to the defendant. It will be noted that the invoice of the material shipped made no reference to the sample theretofore sent by the plaintiff to the defendant, and we may here add that there is not a word in the record showing that the 38,000 pounds of clay material shipped by the plaintiff to the defendant corresponded in any particular with the samples contained in the

two sacks mentioned in the letter of the plaintiff to the defendant. Nor was any testimony introduced by the plaintiff showing that the invoice correctly described the quality of the shipment.

 The basis of the appellant's contention that the defendant is bound by an account stated rests upon a letter written by the defendant to the plaintiff, dated August 3, 1935, to wit:

"Carbonated Sweet Cider in bottles

Pure Apple Juice in bulk and glass jars

Pure Cider Vinegar
Apple Syrup
Apple Butter
Boiled Cider.

Awarded Gold Medal Panama Pacific Exposition.

Western Cider Works
George Blaufuss, Prop. Phone 653–W
Manufacturers of the Saxon Brand Apple Ciders.
Napa, Calif.
Aug. 3, 35.

"Western Talc Co.
 "Los Angeles, Calif.

 "Attention: Mr. F. H. Savell.

"Dear Sir:

"I have been wanting to write you long before this. I almost despaired because I was afraid that I could not use that shipment of Bentonite at all. It is not the same material that we had five years ago.

"We have to burn it at 245 degrees higher before it will stand the hydration treatment. It took us a long time to find that out. In the meantime, we was compelled to make a shipment of a ton-and-a-half of softener because the party had made a down payment. Unfortunately, it takes approximately 10 days to find how the mineral will act after it is finished. We took a chance on the ton-and-a-half, and now we had to take it back again and give the man his money back.

"We have used up a third of the shipment and we have only one ton that will give 80 grains per pound instead of 125 as we had guaranteed our prospects. The vitrification point and point of hardness are so close that I was compelled

to put in a new pyrometer equipment in order to handle it at all. I have been under a tremendous expense for fuel, labor and chemicals besides. And we have practically nothing to sell. I do not blame you directly for this because I believe you thought you was giving me the same material. But I have to ask you now to give me lots more time for the payments. I had to mix some other material with the Bentonite in order to get it up to 80 grains. I will have to sell it at a reduced price in order to compete with the capacity of other base exchange material.

"My cider season is now at hand and I will have to stop for two or three months before going any further with the softener. In the meantime, I must ask you, under the circumstances, to extend me a credit for at least three months before the payments start. I expect to have a good run on the cider and can use the profits of that to pay for this Bentonite.

"Hoping that you will be able to see the difficulties that I am working under, and grant my request, I am,

"Yours very truly,

"(Signed) GEORGE BLAUFUSS."

The amended answer of the defendant raises the question for consideration by the court that this letter was written under a mistake as to the quality of the material theretofore shipped by the plaintiff to the defendant, and before he had fully ascertained that it was not "Bentonite No. 1", or bentonite at all, and that he subsequently did ascertain, from having a chemical analysis made, that the material shipped was known as "Ammonium Silica". It appears from the record that "Ammonium Silica" and "Bentonite No. 1" come from the same mine near Barstow, but in different portions thereof. The record shows an abundance of testimony, not only that the shipment made by the plaintiff to the defendant was not "Bentonite No. 1", as described in the invoice, but was not bentonite at all. The record contains much testimony showing the difference in the material, which, however, it is unnecessary to set forth herein as the sufficiency of such testimony is not questioned by the appellant.

The contention of the appellant that the alleged account stated could not be questioned is sufficiently answered in the case of *Budd* v. *Hough*, 100 Cal. App. 103 [279 Pac.

1074], and likewise, the grounds upon which such an account may be impeached is set forth definitely, to wit: "As uniformly held, an account stated does not operate as an estoppel, but may be impeached for fraud or mistake; and if either of those elements is plead and the evidence adduced in support of the pleading proves that there has been any mistake, fraud, or undue advantage, by which the account is in truth vitiated, and the balance incorrectly fixed, the account is not conclusive upon the parties. (*Union Lbr. Co.* v. *J. W. Schouten & Co.*, 25 Cal. App. 80 [142 Pac. 910]; *Vaughan* v. *County of Tulare*, 56 Cal. App. 261 [205 Pac. 21]; *Gardner* v. *Watson*, 170 Cal. 570 [150 Pac. 994]; 1 Am. & Eng. Ency. of Law 2d ed., 463.) Moreover, section 1700 of the Civil Code provides that the material alteration of a written contract by a party entitled to any benefit under it extinguishes all executory obligations of the contract in his favor against the parties who do not consent to the act." Further citation of authorities on this point seems to us unnecessary.

In view of what we have stated and what the record shows, as set forth herein, we do not very well perceive any necessity for following the discussion of the appellant any further as to the subject of warranties and the different cases holding that under the circumstances in the different cases involved no warranties could be either expressly or impliedly held to exist. The record shows, as set forth herein, that the plaintiff assumed, and in its invoice represented that it had shipped to the defendant "Bentonite No. 1," whereas in truth and in fact there is sufficient testimony in the record upon which the jury had a right to conclude that the plaintiff did not ship "Bentonite No. 1" or any bentonite at all, but did ship to the plaintiff a clay composition known as "Ammonium Silica", which was of no value whatever to the defendant, but which, in his attempt to use the same, greatly injured his business and damaged him in the sum alleged.

There was also sufficient testimony in the record to support the conclusion of the jury that the defendant, when he wrote the letter of August 3, 1935, was acting under a mistake and misapprehension as to what kind of product the plaintiff had shipped to him, and did not ascertain the same until some months afterwards.

The contention of the appellant that it was error for the court to allow the defendant to file an amended answer seems to us wholly without merit.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.