[Civ. No. 6872. Third Dist. Feb. 29, 1944.]

E. A. KINKLE, Respondent, v. FRUIT GROWERS SUPPLY
COMPANY (a Corporation), Appellant.

104

Farrand & Farrand, Leonard B. Slosson and Tebbe & Correia for Appellant.

Huston, Huston & Huston, Daniel Dennis and J. Everett Barr for Respondent.

THOMPSON, J.—The plaintiff brought suit on a contract for the balance due to him for cutting and hauling logs from defendant's timber land at an agreed price per thousand board feet, together with damages resulting from forced delay in fulfillment of the contract. The answer admits that defendant owes plaintiff the sum of $7,359.55 which was withheld by the defendant pending the litigation, as a guaranty of faithful performance. There is no controversy regarding the last mentioned sum. The cause was tried with a jury. Judgment was rendered in favor of the plaintiff, on account of discrepancies in defendant's measurements of logs, in the sum of $6,777.30, together with damages in the further sum of $376.60, and said withheld amount. From that judgment this appeal was perfected.

The defendant is a corporation engaged in cutting and manufacturing timber. It owns timber land in Siskiyou County, California, upon which there was a large stand of

fir, pine and cedar trees. The corporation maintained a mill-pond at Hilt, some distance from the lumber camp, to which the logs were hauled and into which they were dumped. The plaintiff is a contractor who has had many years of experience cutting and logging timber. October 18, 1937, he executed, as party of the second part, a written contract with the defendant to cut and deliver at the millpond at Hilt 12,000,000 board feet of fir, pine and cedar logs within a specified time, for the agreed price of $9.00 per thousand feet for fir and cedar and $9.75 per thousand feet for sugar or ponderosa pine. The answer concedes that the defendant cut and hauled, pursuant to contract, 14,718,950 board feet of logs. The plaintiff contends that the defendant failed to measure the logs according to Scribner's Decimal ''C'' Scale Rule, as required by the contract, and that defendant's erroneous measurements deprived plaintiff of credit to which he is entitled for delivery of logs, containing in excess of 1,000,000 feet of lumber more than the defendant's reports concede. Having learned of defendant's erroneous measurements, the plaintiff procured expert lumber checkers to measure numerous loads of logs after their delivery at the Hilt millpond, and compared the results with defendant's reports upon the same logs. From plaintiff's check scaling of logs it was estimated that he cut and delivered logs containing in the aggregate over 15,894,000 feet of lumber. The jury returned a verdict in favor of plaintiff on that issue of erroneous measurements, equivalent to a sum, based on a shortage of only 753,000 feet of lumber, at the minimum price of $9.00 per thousand. The verdict was for $6,777.30.

The contract contains the following provisions:

''4. A correct scale of the logs so delivered shall be made at the first party's mill pond at Hilt, California, before the logs are placed in the pond. Scribner's Decimal 'C' scale rule is to be used in the measurement of the logs, and will be scaled by a scaler in the employ of the first party, fifty-five percent of whose salary shall be paid by the first party, and the other forty-five percent will be paid by the contract loggers according to percent of logs delivered by each.

''5. . . . Said first party hereby agrees to cause a daily record to be kept of the loads delivered at its said mill pond, which records shall be furnished daily to second party by said first party; and a check scale may be made at any time upon the demand of either party to this agreement.

"Said first party hereby agrees to pay said second party for all logs properly felled, bucked, limbed and delivered in accordance with the terms and specifications of this agreement. . . ."

The appellant contends that (1) the plaintiff is bound by the terms of the contract to the measurements of logs by the corporation's scaler, (2) the court erred in rendering judgment for total shortage of lumber based on an estimate derived from check scaling only a comparatively small proportion of the logs, (3) the acceptance and cashing of checks in payment for delivery of logs in accordance with accompanying reports constituted an accord and satisfaction, (4) failure to object to defendant's statements rendered, resulted in accounts stated which bars the plaintiff from disputing the measurements of logs contained therein, and (5) the evidence fails to support the implied findings of the jury or the judgment of the court with respect to the balance due plaintiff.

The judgment is adequately supported by the evidence. The defendant's checker admitted that he did not conform to the Scribner's Decimal "C" Scale Rule as it was defined by other expert scalers. There is evidence that defendant's method of scaling logs resulted in a loss to plaintiff of a sum in excess of the amount of the judgment on that issue as a result of measurements in conflict with said agreed rule. The actual measurements of logs by expert scalers employed by plaintiff showed a loss of 63,540 feet of lumber as compared with defendant's reports of those same logs. An estimate of total shortage on the same ratio far exceeds the amount for which judgment was rendered on that account. The plaintiff did not discover the defendant's uniform shortages in measurements of logs until he had delivered a large quantity of logs in the spring of 1938. When he reported those discrepancies to defendant's superintendent he assured him that the corporation would adjust all such errors. Relying upon that assurance the plaintiff continued to deliver logs. The plaintiff actually measured about 1/18th of all logs, but was prevented from measuring a greater proportion of them because they were dumped into the millpond and mingled with other logs before he had the opportunity to do so.

It is true that where the parties, by the express terms

of their contract, agree to abide by the quantity, quality or value of property or of services to be determined by a specifically designated party, his judgment or estimate thereof may be binding, in the absence of fraud or mistake. (*California Sugar & White Pine Agency* v. *Penoyar*, 167 Cal. 274, 279 [139 P. 671]; *American-Hawaiian Engineering & Construction Co.* v. *Butler*, 165 Cal. 497, 513 [133 P. 280, Ann.Cas. 1916C 44]; *Moore* v. *Kerr*, 65 Cal. 519 [4 P. 542]; 12 Am. Jur. 898, sec. 342; 46 A.L.R. 864, note.) A mistake which will justify a rejection of an arbiter's decision is not a mere error in judgment, but, on the contrary, it must amount to actual or constructive fraud. (*California Sugar & White Pine Agency* v. *Penoyar, supra.*) In the present case, however, the contract does not provide that the estimates of defendant's scaler shall become *conclusive*. It specifically provides that "a *correct* scale of the logs so delivered shall be made" according to the customary "Scribner's Decimal 'C' Scale Rule"; that a "check scale may be made at any time upon the demand of either party" and that the defendant company shall "cause a daily record to be kept . . . which record shall be furnished daily to second party."

Mr. Bert A. Mitchell, who was in the employ of the defendant company, scaled the logs. He violated the contract by measuring the logs contrary to the agreed Scribner's Decimal "C" Scale Rule, to the plaintiff's detriment. That rule required the actual measurement of logs showing a fraction above one-half inch to be accepted as an added full inch. Mr. Harrison, an expert scaler of logs having had thirty-five years of experience in that business, testified that the rule requires that "anything a half inch or under in diameter is scaled as the next inch below; anything over a half inch *is scaled as the next inch above.*" Mr. Mitchell, however, admitted that he did not follow that rule, but asserted that he gave his employer the benefit of the fraction when the logs scaled below three-quarters of an inch. He said in that regard:

"Q. Now, Mr. Mitchell, . . . what was your practice as to whether you dropped fractions or went up to the next higher inch? A. Well, if it was up to the three-quarter inch, I would jump to the next figure. Q. If it was below the three-quarter inch, what was your practice? A. If it was below that, I would drop back to the next inch."

Mr. William Simpson, logging superintendent of the Brisard Brockwood Pine Company at Lakeview, Oregon, who had thirty-two years' experience in the logging business, testified that the variance from the Scribner's Decimal "C" Scale Rule, as above stated, would result in a substantial loss to the logging contractor. He said it would make a difference of seventy lumber feet in one sixteen-foot log forty inches in diameter. It was estimated that difference would amount to a loss of 5.7 per cent of the lumber contained in logs. On a contract involving over 15,800,000 board feet of lumber, at the minimum price of $9.00 per thousand, that percentage of difference would result in a loss far in excess of the amount of the judgment on that account. The judgment was rendered on that issue for the sum of $6,777.30. That figure represents only a loss of 753,000 feet of lumber at the minimum price of $9.00 per thousand. The foregoing evidence therefore supports the findings and judgment in that regard.

The plaintiff delivered only a comparatively few logs in the fall of 1937. He began delivery of larger quantities of logs at the millpond at Hilt in the spring of 1938. In May and June of 1938, Leonard Shelton, an experienced logging man in the employ of plaintiff, watched the defendant's scaler measuring several carloads of logs, and charged that he failed to measure them properly. He informed the plaintiff of that fact. The plaintiff then became suspicious of the measurements and employed expert scalers to check the defendant's reports of the board feet of lumber contained in certain shipments. In comparing plaintiff's measurements with those of the defendant of twelve truckloads and two carloads of logs delivered in May and June, as shown by the statement thereof which was received in evidence, it was discovered defendant's measurements of nearly every load were short. The aggregate shortage in those loads amounted to 5,790 lumber feet. The plaintiff then complained of the shortages to Waldemar Holmberg, the manager and superintendent of defendant company, who repeatedly assured him "If there's any difference in this scale, we will adjust it." With those assurances the plaintiff continued to deliver logs at the millpond, but from time to time he measured a total number of fifty carloads and fifty-two truckloads of logs delivered prior to November 1, 1939, aggregating 852,280 board feet of logs, in which he found a total shortage of 63,540 feet

of lumber. The defendant's reports allowed the plaintiff on those same loads of logs only 789,270 board feet of lumber, which resulted in a loss to plaintiff of over 7½ per cent. Estimated at that same rate he would sustain a loss on the entire 15,800,000 odd feet of 1,185,000 board feet of lumber. Figuring that estimated loss at the minimum sum of $9.00 per thousand, the result far exceeds the amount for which judgment was rendered on that account. The judgment is therefore sustained by the evidence.

The appellant contends that there is no evidence justifying the jury in finding that there was any shortage in the scaling of the large proportion of logs which the plaintiff did not actually measure. In other words, the corporation asserts that there is no legal authority for applying the ratio of 7½ per cent loss, ascertained by plaintiff's check scaling of logs containing only 852,280 feet of lumber, to the much larger proportion of the logs which he did not actually measure. In support of that claim the appellant relies on the case of *McCann v. Doherty*, 98 Wis. 335 [73 N.W. 782], in which it is said:

"The test was made by scaling 710 logs taken promiscuously from different rolls, and they were found to contain 21,720 feet more than was represented by Gallagher's measurement. It was contended by counsel on the argument that, even if such shortage existed as to the 710 so rescaled, yet it did not follow that there would be a corresponding shortage on the 27,868 logs which were not rescaled; and some of us were impressed with such argument. But upon careful consideration we are forced to the conclusion that the verdict does not rest wholly upon such test. On the contrary, there was a number of other tests, and there was evidence tending directly to impeach the good faith of Gallagher's scale. The evidence of such tests was admissible. In fact, no objection appears to have been made to its admission. After being banked, the logs passed into the possession of the defendant, so as to render complete remeasurement by the plaintiffs very difficult, if not impossible."

The reasons for accepting the same proportionate ascertained shortage as the basis of loss with respect to the logs which were not actually rescaled, which are suggested in the McCann case, *supra,* also appear to exist in the present case. There is evidence in this case that plaintiff was not able to rescale the balance of the logs because they had been dumped

in the millpond and mingled with other logs; that the invariable shortage in all logs rescaled, indicated a lack of good faith on the part of defendant's scaler; that the defendant violated the express terms of the contract by failing to follow the Scribner's Decimal ''C'' Scale Rule in measuring all logs. There is evidence to the effect that defendant's method of allowing plaintiff an additional inch in diameter measurements of logs only when they exceeded the three-fourths fraction would uniformly result in a loss of approximately 5½ per cent of the total amount of lumber contained therein. Applying that uniform percentage to the entire output of lumber, the result obtained from a mere mathematical calculation shows a total shortage far in excess of the board feet of lumber upon which the jury estimated its award, even at the minimum agreed price of $9.00 per thousand feet. There is therefore substantial evidence to support the verdict in that regard. We think the verdict is adequately supported with respect to the total shortage determined by the jury.

It is true that the doctrine of accord and satisfaction, as defined by sections 1521-1523 of the Civil Code is ordinarily available as a defense to an action only when it is specially pleaded. (*Berger* v. *Lane,* 190 Cal. 443, 447 [213 P. 45]; *Russell* v. *Riley & Peterson,* 82 Cal.App. 728 [256 P. 557]; *Wallace* v. *Crawford,* 21 Cal.App.2d 394, 403 [69 P.2d 455]; 1 C.J.S. 551, sec. 47c.) But, as an exception to that rule, when the complaint is based on a common count and payment on account of the claim sued upon is alleged therein and evidence of the payment in question is received without objection, as it was in the present case, the defense of accord and satisfaction may be available without a special plea to that effect. (*B. & W. Engineering Co.* v. *Beam,* 23 Cal.App. 164, 177 [137 P. 624]; *Russell* v. *Riley & Peterson, supra; Wallace* v. *Crawford, supra.*) In the present case, while the defendant did not specially plead accord and satisfaction as a defense, the complaint alleged the payment, on account of the entire indebtedness due, of the sum of $138,608.12, and the defendant offered in evidence, without objection, the checks in question with proof of the endorsements thereon that ''This voucher check will constitute a full receipt for the account stated on the voucher of corresponding number.'' That defense is therefore available to the defendant under the circumstances of this case.

However, in spite of the defendant's reports of measurements of the logs which were periodically received by the plaintiff, and his acceptance and cashing of the checks in question, upon the backs of which there were printed the statement that they were "in full receipt" for the indebtedness shown by the reports rendered, the record in this case contains substantial evidence of facts and circumstances adequately supporting the special findings of the jury that a controversy then existed between the parties regarding the correct measurements of the logs and the balance due to the plaintiff, and that he did not thereby intend to, nor did he, accept the payments as full compensation for the amount due to him under the contract.

We are of the opinion there is adequate evidence of circumstances in this case to support the special findings of the jury and the judgment in favor of the plaintiff to the effect that his acceptance and cashing of certain checks and his receipt of reports of measurements of logs by the defendant did not constitute an accord and satisfaction precluding the plaintiff from recovering judgment for the balance found to be due to him on account of erroneous measurements. (*Hansen* v. *Fresno Jersey Farm Dairy Co.*, 220 Cal. 402 [31 P.2d 359]; *Wallace* v. *Crawford, supra,* 23 R.C.L. 1445, sec. 269; 1 C.J.S. 510, sec. 31c.) The question as to whether the acceptance and cashing of checks in payment of installments of indebtedness on account of a series of numerous deliveries of logs under a contract continuing over a period of many months amounts to an accord and satisfaction, even though the checks contain the printed endorsement that they "will constitute a full receipt of the account stated on the voucher of corresponding number" depends on the circumstances of the transaction and the conduct of the parties. The question of the existence of an accord and satisfaction depends on the mutual intention of the respective parties, and unless there is a lack of evidence to support the finding of the jury or the decision of the trial court in that regard, their determination of that issue will not be disturbed on appeal. (*Everhardy* v. *Union Finance Co.*, 115 Cal. App. 460, 466 [1 P.2d 1024]; *Wallace* v. *Crawford, supra.*)

In the present case the evidence shows that the plaintiff discovered that the defendant was erroneously measuring the logs and called defendant's attention to that fact in May and June, 1938. The superintendent of defendant's corpora-

tion then assured plaintiff that any differences in measurements which might exist would be adjusted. That was notice that the plaintiff did not accept defendant's measurements of the logs. Plaintiff thereafter measured about one-eighteenth of the entire number of logs involved in the contract, and found that, in 852,280 board feet of logs, defendant failed to credit him with 63,540 feet of lumber. Upon evidence of that fact the jury estimated that the defendant erroneously failed to credit plaintiff with a total amount of some 753,000 board feet of lumber to which he was entitled and awarded him a judgment of $6,777.30 on that account. The logging enterprise and the delivery of logs under the contract extended over a period of at least two years. Pursuant to the contract the defendant reserved 50 cents per thousand on all logs delivered, aggregating a sum in excess of $7,000, to insure faithful performance of the contract, which sum was not paid to plaintiff. The reports and partial payments for logs delivered were made monthly. The transaction was not completed at the time plaintiff received the checks. The plaintiff claimed that he was forced to accept partial payments to enable him to finance his logging enterprise, and that he was assured the defendant would adjust all differences in measurements of logs.

Under proper instructions special issues were submitted to the jury upon questions regarding the facts involved in the asserted account stated and with respect to the claimed accord and satisfaction. Those issues were specifically determined against the defendant. The jury expressly found that a controversy existed between the parties regarding the measurements of the logs and the balance due to plaintiff. The jury also found that plaintiff did not accept defendant's reports as correct, and did not intend to acknowledge full payment and satisfaction of his claims by signing and cashing the checks in question. The court adopted those findings and rendered judgment accordingly.

It is true that the acceptance and cashing of checks in payment of indebtedness, upon which checks there is endorsed "This voucher check will constitute a full receipt for the account stated on the voucher of corresponding number" should be considered, and, under some circumstances, may be very persuasive evidence of stated accounts. (*Wallace* v. *Crawford, supra;* 75 A.L.R. 905, note.) But the authorities

appear to hold those facts are not necessarily conclusive. (1 Am.Jur. 285, sec. 30.) An account stated is based primarily on the question as to whether both parties intend the transaction to become a full and final settlement of the entire indebtedness represented thereby. That is usually a question to be determined by the jury or the trial court from all the circumstances of the case. We may not hold, as a matter of law, from the facts of this case, that the plaintiff intended to accept those payments as full compensation. He then had no knowledge of the fact that defendant's scaler had violated the contract by failing to measure the logs according to the Scribner's Decimal "C" Scale Rule. His conduct, declarations and measurements of a large number of logs, the frequent prior and subsequent controversies over the erroneous scaling of the logs and the instituting of this suit furnish substantial evidence refuting his acquiescence in defendant's reports and partial payments as a complete settlement of his claim. In the case of *Budd* v. *Hough,* 100 Cal.App. 103 [279 P. 1074], it is said with respect to the conclusiveness of an alleged account stated that:

"As uniformly held, an account stated does not operate as an estoppel, but may be impeached for fraud or mistake; and if either of those elements is plead and the evidence adduced in support of the pleading proves that there has been any mistake, fraud or undue advantage, by which the account is in truth vitiated, and the balance incorrectly fixed, the account is not conclusive upon the parties. (*Union Lumber Co.* v. *J. W. Schouten & Co.,* 25 Cal.App. 80 [142 P. 910]; *Vaughan* v. *County of Tulare,* 56 Cal.App. 261 [205 P. 21]; *Gardner* v. *Watson,* 170 Cal. 570 [150 P. 994]; 1 Am. & Eng. Ency. of Law, 2d ed., 463.)"

 An account stated is not absolutely conclusive, but merely furnishes prima facie evidence of its accuracy. It may, nevertheless, be impeached by fraud, omission or mistake. (*Union Lumber Co.* v. *J. W. Schouten & Co.,* 25 Cal. App. 80 [142 P. 910]; *White* v. *Thompson,* 40 Cal.App. 447 [180 P. 953]; *Vaughan* v. *County of Tulare,* 56 Cal.App. 261, 268 [205 P. 21]; *Western Talc Co.* v. *Blaufuss,* 25 Cal. App.2d 270 [77 P.2d 479]; *Green* v. *Thornton,* 96 Cal. 67 [30 P. 965]; 11 A.L.R. 597, note; 75 A.L.R. 1287, note.)

In 1 American Jurisprudence, section 31, at page 286, it is said with respect to the conclusiveness of an account stated, that:

"An account stated may be impeached or opened and rectified for fraud, mistake, or error, unless, in arriving at the agreed balance, there has been some concession made upon items disputed between the parties so that the balance is the result of a compromise, or some act has been done or forborne in consequence of the accounting and in reliance upon it, which would put the party claiming the benefit of it in a worse position than if it had not been had, so as to bring the case within the principles of an estoppel in pais."

In the present case, while the plaintiff knew defendant's measurements of logs were inaccurate and wrong, he relied on the assurance that those errors would be adjusted, and he did not know when he accepted and cashed the checks in question that the defendant was violating the contract by its failure to measure the logs according to the Scribner's Decimal "C" Scale Rule, to his great detriment. That failure constituted constructive fraud, or at least mistake, which rendered competent plaintiff's evidence impeaching the alleged conclusiveness of the asserted stated account.

Since there is substantial evidence supporting the special findings of the jury to the effect that there was a valid controversy between the parties and that the plaintiff did not accept and cash the checks with the intention of waiving his claim of violation of the contract and erroneous measurements of the logs, or as complete satisfaction of the balance due to him, we are bound by the findings of the jury in that regard. In 1 American Jurisprudence 271, section 15, it is said in that regard:

"Under the general rule that if there is any credible evidence from which a reasonable inference can be drawn in support of the claim of either party, the question must be left to the jury, where different conclusions may reasonably be drawn by different minds from the same evidence as to whether an account is a mutual account, the question is one for the jury."

We conclude that the alleged stated account is not binding on the plaintiff so as to estop him from recovering the balance due to him on account of the errors, fraud or mistakes of the defendant.

The judgment for damages in the sum of $376.60, based on the second cause of action, is adequately supported by the evidence. It sufficiently appears that plaintiff's cutting and delivery of logs pursuant to the contract was delayed

and prevented during several periods of time in 1938 and 1939, by direction of the defendant, and that those delays required plaintiff to reconstruct and repair his logging roads at a cost in excess of the amount of that judgment.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.